```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                      12-20232-CV-SEITZ/SIMONTON
 3
   WI-LAN USA, INC., AND          )
 4 WI-LAN INC.,                   )
                                  )
 5              PLAINTIFFS,        )
                                  )
 6         VS.                    )
                                  )
 7 RESEARCH IN MOTION LTD., AND   )
   RESEARCH IN MOTION CORPORATION)
 8                                )
                   DEFENDANTS.    )
 9 _____ )
10               (TRANSCRIPT BY DIGITAL RECORDING)
11
12         TRANSCRIPT OF DISCOVERY HEARING HAD BEFORE THE
13 HONORABLE ANDREA M. SIMONTON, IN MIAMI, MIAMI-DADE COUNTY,
14 FLORIDA, ON JULY 26, 2012, IN THE ABOVE-STYLED MATTER.
15
   APPEARANCES:
16
   FOR THE PLAINTIFFS:   CURTIS D. CARLSON, ESQ.
17                       CARLSON & LEWITTES PA
                         ONE SE THIRD AVENUE, SUITE 1200
18                       MIAMI, FL 33131 - 305 372-9700
19 FOR THE DEFENDANTS:   KURT M. PANKRATZ,
                         JOHNSON KUNCHERA, AND
20                       ROSHAN MANSINGHANI, ESQS.
                         BAKER BOOTS, LLP
21                       2001 ROSS AVENUE, SUITE 600
                         DALLAS, TX 15201 - 214 953-6584
22
                         CARL SCHANZLEH
23                    OFFICIAL COURT REPORTER
                       U. S. COURTHOUSE
24                 299 E. BROWARD BLVD., 202B
                   FORT LAUDERDALE, FLORIDA 33301
25                      954 769-5488
```

 1  (MIAMI, MIAMI-DADE COUNTY, FLORIDA;  JULY 26, 2012, IN OPEN

 2  COURT.)

 3          (DAR DID NOT START AT THE BEGINNING)

 4          THE COURT:  -- FOR THE RECORD.

 5          MR. CARLSON:  MAY IT PLEASE THE COURT, MY NAME IS

 6  CURTIS CARLSON, CARLSON & LEWITTES HERE IN MIAMI, AND I AM HERE

 7  REPRESENTING WI-LAN USA AS WELL AS WI-LAN CORPORATION.

 8          THE COURT:  THANK YOU.  AND WHO IS SEATED WITH YOU AT

 9  COUNSEL TABLE?

10          MR. CARLSON:  THE PRESIDENT OF WI-LAN USA, MR. MAT

11  A-P-A-S-U-L-K-A.

12          THE COURT:  OKAY.  THANK YOU.

13          AND ON BEHALF OF THE DEFENDANTS?

14          MR. PANKRATZ:  YOUR HONOR, ON THE PHONE THIS IS KURT

15  PANKRATZ WITH BAKER BOOTS ON BEHALF OF DEFENDANT RIM.

16          THE COURT:  OKAY.  YOU DON'T COME ACROSS VERY CLEARLY

17  ON YOUR -- I DON'T KNOW IF YOU ARE TOO CLOSE TO YOUR PHONE

18  OR WHAT IT IS.

19          MR. PANKRATZ:  I AM SORRY, YOUR HONOR.  I STEPPED OUT

20  OF A DEPOSITION UP HERE IN THE BOSTON AREA AND I'M ON MY

21  CELLPHONE.  I APOLOGIZE FOR ANY DIFFICULTY UNDERSTANDING ME.

22          THE COURT:  OKAY.  AND IT'S KURT PANKRATZ, IS THAT

23  CORRECT?

24          MR. PANKRATZ:  YES, YOUR HONOR.

25          ALSO ON THE PHONE FROM MY LAW FIRM ARE JOHNSON

```
 1  KUNCHERA AND ROSHAN MANSINGHANI.  AND I DON'T THINK I HEARD
 2  (UNINTELLIGIBLE) COUNSEL FOR RIM MR. FRANK GENG IS INTENDING TO
 3  JOIN.
 4             MR. GENG, ARE YOU ON THE CALL?
 5             MR. GENG:  I'M HERE.  GOOD AFTERNOON, YOUR HONOR.
 6             THE COURT:  OKAY.  I AM SORRY.  I AM JUST A LITTLE
 7  CONFUSED ABOUT -- OKAY.  MR. PANKRATZ, WHO ARE THE ATTORNEYS
 8  WITH YOU?  ARE THEY LISTED ON THE DOCKET SHEET OR ARE THESE
 9  JUST EXTRA PEOPLE?
10             MR. PANKRATZ:  YOUR HONOR, I BELIEVE THEY ARE LISTED
11  ON THE DOCKET SHEET.  THE IN-HOUSE COUNSEL FOR RIM WILL NOT BE
12  LISTED ON THE DOCKET SHEET.
13             THE COURT:  OKAY.  SO YOU ARE -- ARE YOU THE PERSON
14  WHO IS SPEAKING TODAY, MR. PANKRATZ?
15             MR. PANKRATZ:  YES, YOUR HONOR, I AM.
16             THE COURT:  OKAY.  AND WHO IS -- CAN YOU SPELL THE
17  NAME OF IN-HOUSE COUNSEL?
18             MR. PANKRATZ:  FRANK GENG, G-E-N-G.
19             THE COURT:  G-E-N-G.  OKAY.  THANK YOU.
20             WE ARE HERE TODAY BASED UPON THE NOTICE OF HEARING
21  THAT WAS FILED BY I BELIEVE IT WAS MR. CARLSON, IS THAT
22  CORRECT?
23             MR. CARLSON:  YES.
24             THE COURT:  YOU FILED IT?
25             MR. CARLSON:  YES, MA'AM.
```

1           THE COURT:  AND YOU ARE ARGUING IT, CORRECT?

2           MR. CARLSON:  YES, MA'AM.

3           THE COURT:  I WILL JUST SAY AT THE OUTSET I WAS HANDED

4  A GROUP OF DOCUMENTS BY PLAINTIFFS' COUNSEL.  I AM NOT SURE --

5  I HAVEN'T LOOKED AT THEM BECAUSE THEY WERE JUST PUT ON MY

6  BENCH.

7           IS THIS THE SAME AS WHAT WAS SUBMITTED IN CONNECTION

8  WITH THE NOTICE OF HEARING?  IT LOOKS LIKE THE -- IT'S NOT --

9  IT'S NOT CLEAR TO ME THAT IT WAS.  I KNOW THAT YOU HAD THE

10  SCHEDULING CONFERENCE THAT WAS HELD BEFORE JUDGE SEITZ ON JUNE

11  7TH, AND I WILL JUST TELL YOU THAT I -- I HAVE READ THAT.

12  THAT'S DOCKETS ENTRY 54.  I READ THAT IN PREPARATION OF THE

13  HEARING.

14          WITH RESPECT TO THE OTHER TWO DOCUMENTS, SINCE YOU ARE

15  NOT HERE, MR. PANKRATZ, I WILL JUST SAY ONE OF THEM IS RIM'S

16  FIRST AMENDED OBJECTIONS AND RESPONSES TO THE FIRST SET OF

17  INTERROGATORIES.

18          I BELIEVE THAT WAS FILED, IS THAT CORRECT,

19  MR. CARLSON?

20          MR. CARLSON:  YES, IT IS.

21          THE COURT:  THE SECOND ONE IS DEFENDANT RESEARCH IN

22  MOTION LIMITED AND RESEARCH IN MOTION CORPORATION'S OBJECTIONS

23  AND RESPONSES TO THE FIRST SET OF REQUEST FOR PRODUCTION.  WHAT

24  WAS FILED WAS THE AMENDED OBJECTIONS AND RESPONSES.  AND, SO

25  I'M NOT SURE WHY I HAVE THE ORIGINAL ONE, MR. CARLSON.

1          MR. CARLSON:  THAT'S AN ERROR ON MY PART, YOUR HONOR.

2          THE COURT:  OKAY.  WELL, I HAVE WHAT WAS --

3          MR. CARLSON:  OKAY.

4          THE COURT:  -- FILED WHICH ARE THE FIRST AMENDED

5     OBJECTIONS.

6          MR. CARLSON:  ALL RIGHT.

7          THE COURT:  AND, SO I JUST WANT TO MAKE SURE,

8     MR. PANKRATZ, THAT YOU ARE AWARE OF WHAT WAS HERE.

9          ALSO, TYPICALLY WHEN I AGREE SOMEBODY CAN APPEAR BY

10    PHONE THEY HAVE THEIR LOCAL COUNSEL PRESENT, AND THAT WAY IF WE

11    DO HAVE TELEPHONIC DIFFICULTIES THERE IS SOMEBODY WHO IS

12    PRESENT, OR IF THERE ARE ANY DOCUMENTS THAT ARE SHOWN THERE IS

13    SOMEBODY PRESENT TO LOOK AT THOSE DOCUMENTS.  SO I WILL JUST

14    SAY THAT FOR FUTURE REFERENCE.

15         MR. PANKRATZ:  YOUR HONOR, THANK YOU.

16         AND OUR LOCAL COUNSEL, HARLEY TROPIN AND GAIL

17    MCQUILKIN UNFORTUNATELY HAD CONFLICTS.  THEY WERE TRYING TO AT

18    THE LAST MINUTE TO GET A STAND IN.  ORIGINALLY (UNINTELLIGIBLE)

19    INFORMED US THAT IT WOULD BE TRULY A TELEPHONIC CONFERENCE.  SO

20    WE APOLOGIZE, YOUR HONOR.

21         THE COURT:  OKAY.  THAT IS FINE.  I'M JUST LETTING YOU

22    KNOW THAT IF IN FACT YOU ARE GOING TO APPEAR BY TELEPHONE

23    GENERALLY WE ASK THAT THAT BE DONE.  IF FOR SOME REASON IT

24    CAN'T BE DONE THEN YOU JUST NEED TO LET US KNOW.  IN THAT CASE

25    THERE ARE TIMES WHEN I MAY CONTINUE IT OR I MAY PERMIT IT TO BE

 1  COMPLETELY TELEPHONIC.

 2       I WILL TELL YOU THAT I'VE REVIEWED THE FILES IN THIS
 3  CASE.  I DID READ THE SCHEDULING CONFERENCE TRANSCRIPT WHERE
 4  YOU EXPLAINED IN BASIC GENERAL TERMS THE CLAIMS OF THE PATENTS
 5  THAT ARE AT ISSUE IN THIS CASE AND JUDGE SEITZ HAD SOME
 6  COMMENTS TO MAKE REGARDING HOW THE CASE SHOULD PROGRESS.

 7       I HAVE REVIEWED THE DESIGNATED DISCOVERY REQUESTS AS
 8  WELL.  I WON'T SAY THAT I AM TOTALLY FAMILIAR WITH THE CASE,
 9  BUT I DO HAVE SOME BASIC FAMILIARITY WITH IT AND I QUICKLY
10  REVIEWED THE COMPLAINT.

11       SO, HAVING SAID THAT, MR. CARLSON, SINCE YOU SET THIS
12  FOR A HEARING WHY DON'T WE TAKE IT ITEM BY ITEM IN WHATEVER
13  ORDER YOU DEEM APPROPRIATE AND I WILL HAVE MR. PANKRATZ
14  RESPOND.

15       MR. CARLSON:  YES.  AND I ALSO WANT TO MENTION, YOUR
16  HONOR, THAT I THOUGHT I ALSO GAVE YOU A PROPOSED REPORT AND
17  RECOMMENDATION IN THE PACKAGE THERE.  IF IT IS NOT I'VE GOT
18  ANOTHER ONE FOR YOU.

19       THE COURT:  WELL, ACTUALLY IT WOULDN'T BE A REPORT AND
20  RECOMMENDATION ON A DISCOVERY MATTER.  I WOULD ENTER AN ORDER
21  ON IT.  AND I DON'T BELIEVE THAT THAT WAS PART OF THE -- I
22  DON'T BELIEVE THAT THAT WAS PART OF THE PACKAGE THAT WAS
23  SUBMITTED.

24       MR. CARLSON:  OKAY.

25       THE COURT:  BUT, IN ANY EVENT, DID YOU RECEIVE A COPY

1 OF THAT, MR. PANKRATZ?

2 MR. CARLSON: NO, HE HAS NOT. I BROUGHT IT WITH ME

3 TODAY. I EXPECTED SOMEBODY WAS GOING TO BE HERE FROM THEIR

4 SIDE.

5 THE COURT: OKAY. OH, I SEE IT. YOU MEAN THE

6 DOCUMENTS THAT WERE LEFT ON MY BENCH THAT YOU GAVE TO MY

7 COURTROOM DEPUTY, NOT THAT WAS FILED.

8 MR. CARLSON: CORRECT.

9 THE COURT: OKAY. I HAD OVERLOOKED THAT IN REVIEWING

10 THE MATTERS THAT WERE SUBMITTED.

11 MR. CARLSON: ALL RIGHT. WELL, IF I MAY BEGIN --

12 THE COURT: YES.

13 MR. CARLSON: -- WITH THE COURT'S PERMISSION.

14 THE FIRST REQUEST FOR PRODUCTION THAT WE WOULD LIKE TO

15 ADDRESS IS NUMBER 20.

16 NUMBER 20 SEEKS PRESS RELEASES CONCERNING -- AND THIS

17 IS SORT OF A NARROWED, YOUR HONOR. IT CONCERNS THE MODELS THAT

18 HAVE BEEN IDENTIFIED BY RIM IN ANSWER TO INTERROGATORIES THAT

19 WE PRESENTED TO THEM.

20 IN ANSWER TO INTERROGATORIES THEY IDENTIFIED 70 MODELS

21 THAT MAY CONTAIN THE FEATURES THAT WE SAY ARE THE FEATURES OF

22 THE PATENT IN SUIT. SO, THEY'VE IDENTIFIED 70 DIFFERENT MODEL

23 NUMBERS. AND, SO WE HAVE NARROWED THE PRESS RELEASES TO PRESS

24 RELEASES CONCERNING THE 70 MODELS.

25 THEIR RESPONSE TO US IS, WELL, YOU CAN GO TO OUR WEB

1  SITE JUST AS EASILY AS WE CAN GO TO OUR WEB SITE AND YOU CAN

2  DOWNLOAD THEM.

3       OUR REPLY TO THAT IS, WELL, WAIT A MOMENT.  THERE'S

4  TWO ISSUES THAT WE NEED TO ADDRESS.  THE FIRST IS COMPLETENESS.

5  WEB SITES ARE DYNAMIC.  THEY ARE EVER CHANGING.  THINGS CAN BE

6  ADDED, DELETED, AND WHAT NOT, AND WE NEED TO MAKE SURE THAT WE

7  HAVE COMPLETE PRESS RELEASES CONCERNING THOSE ITEMS.

8       THE SECONDS ASPECT THAT WE ARE CONCERNED ABOUT IS

9  AUTHENTICATION.  IF WE DOWNLOAD IT THEN WHAT WE ARE GOING TO

10 HAVE TO DO IS SEND THEM REQUEST FOR ADMISSIONS.  YOU KNOW,

11 ADMIT THAT EXHIBIT NUMBER 1 AS A TRUE AND CORRECT COPY OF A

12 PRESS RELEASE THAT YOU POSTED OR ISSUED ON SUCH-AND-SUCH A

13 DATE.  THAT'S JUST AN EXTRA UNNECESSARY STEP.

14      IF THEY PRODUCE IT TO US, THEY HAVE BATES NUMBERS ON

15 IT.  IT SEEMS TO ME THAT THERE WILL BE AN AUTOMATIC

16 AUTHENTICATION AND WE DON'T HAVE TO GO THROUGH THAT WHOLE EXTRA

17 STEP.  SO COMPLETENESS AND AUTHENTICATION ARE OUR ISSUES.

18      THE COURT:  OKAY.  MR. PANKRATZ, ON BEHALF OF THE

19 DEFENDANTS?

20      MR. PANKRATZ:  YES.  THANK YOU, YOUR HONOR.

21      WE THINK IT IS CLEAR, RULE 34 OF THE FEDERAL RULES OF

22 CIVIL PROCEDURE PROVIDE FOR THE INSPECTION OF DOCUMENTS.  WE

23 HAVE CONFIRMED -- LET THEY RESPOND TO MOST OF HIS POINTS

24 COMPLETENESS.

25      WE HAVE ALREADY RESPONDED AND MADE CLEAR TO THEM THAT

 1  THE PRESS DATABASE IS RIM'S DATABASE OF PRESS RELEASES.  SO

 2  THEY HAVE THE ACCESS TO INSPECT RIM'S ENTIRE DATABASE OF PRESS

 3  RELEASES.  COMPLETENESS SHOULD BY A CHECKED BOX ALREADY FOR

 4  THEM.

 5        THE SECOND ISSUE WITH RESPECT TO AUTHENTICATION.  THIS

 6  IS SOMETHING THAT (UNINTELLIGIBLE) HERE FOR THE FIRST TIME.

 7  THEY DID NOT INITIALLY RAISE THIS IN OUR DISCUSSION.  THAT

 8  CERTAINLY TO THE EXTENT THAT THEY WOULD LIKE TO AUTHENTICATE

 9  ANY OF THOSE, WE HAVE UNLIMITED REQUEST FOR ADMISSION IN THIS

10  CASE FOR PURPOSES OF AUTHENTICATION.  WE WILL, OF COURSE,

11  AUTHENTICATE ANY OR ALL OF THOSE THAT THEY BELIEVE ARE RELEVANT

12  TO THIS CASE.

13        THE COURT:  SO YOU'RE SAYING THAT YOU HAVE PROVIDED

14  THEM WITH ACCESS TO EVERYTHING.  SO I SUPPOSE, YOU KNOW, THEIR

15  RESPONSE WOULD BE, YOU PROVIDE US WITH ACCESS AND THEN WE

16  DESIGNATE WHAT YOU WANTED TO COPY AND THEN WE PAY THE COPY

17  COSTS.  I THINK THAT'S THE WAY IT WORKS.

18        MR. CARLSON:  THAT'S NOT THE WAY THAT THEY ARE

19  PROPOSING.

20        THE COURT:  NO.  I UNDERSTAND THAT.

21        MR. CARLSON:  THEY ARE SAYING THERE IS A WEB SITE.  GO

22  TO THE WEB SITE, IT'S PUBLICLY AVAILABLE TO THE WHOLE WORLD.

23  JUST GO TO THE WEB SITE, RIM'S WEB SITE, SLASH, PRESS RELEASES,

24  SLASH, HTML, WHATEVER IT IS, AND JUST DOWNLOAD THEM ALL.

25        THE COURT:  OKAY.  LET ME GET SOME CLARIFICATION.

 1          MR. PANKRATZ, WHAT IS THE -- FIRST OF ALL, YOU HAVEN'T

 2   SAID ANYTHING ABOUT ANY BURDEN ON YOU.

 3          MR. PANKRATZ:  YES, YOUR HONOR.  I WAS ABOUT TO RAISE

 4   THAT.

 5          THEY ARE EFFECTIVELY SAYING THAT RIM SHOULD BEAR THE

 6   BURDEN OF COLLECTING, AND PRODUCING, AND PRINTING OUT, AND

 7   BATES LABELING ALL OF THESE DOCUMENTS BECAUSE THEY DON'T WANT

 8   THE BURDEN OF HAVING TO TRY TO AUTHENTICATE THEM.

 9          WE THINK THAT IS INAPPROPRIATE BECAUSE GENERALLY WHILE

10   THEY CLAIM TO HAVE NARROWED (UNINTELLIGIBLE) THEY ARE JUST

11   ASKING FOR EVERY SINGLE PRESS RELEASE THAT RIM HAS EVER HAD,

12   AND WE THINK THAT THE REQUEST (UNINTELLIGIBLE) IS OVERBROAD TO

13   THE EXTENT THAT THEY (UNINTELLIGIBLE) IS RELEVANT.  IT'S ALL

14   THERE.  THERE ARE SEARCH ENGINE IS BUILT INTO THAT DATABASE

15   THAT THEY CAN USE, BUT FUNDAMENTALLY WE THINK THEY ARE JUST

16   TRYING TO SHIFT THE BURDEN ON TO RIM.

17          THE COURT:  OKAY.  HERE IS MY ISSUE IN TERMS OF WHAT

18   YOU'RE SAYING.

19          YOU HAVEN'T MADE A VERY CONVINCING ARGUMENT ABOUT

20   OVERBREADTH.  I MEAN, THAT IS -- SO I DON'T UNDERSTAND IT

21   BECAUSE ALL YOU'VE JUST SAID IS IT'S OVERBROAD.  WE HAVE A

22   GENERAL ORDER THAT WE USUALLY ENTER, ALTHOUGH I THINK WE ARE A

23   LITTLE BIT BEHIND ON DISCOVERY OBJECTIONS, AND YOU CAN'T JUST

24   SAY VAGUE, OVERBROAD, UNDULY BURDENSOME.  YOU HAVE TO GIVE

25   SPECIFICS.

 1    IT SEEMS TO ME THAT YOU ARE GOING TO HAVE TO DO

 2 EXACTLY WHAT YOU'RE SAYING YOU DON'T WANT TO DO IN RESPONSE TO

 3 A REQUEST FOR ADMISSION AT SOME LATER DATE.

 4    IT WOULD SEEM TO ME THAT, YOU KNOW, TO THE EXTENT

 5 THAT, YOU KNOW, THEY WANT COPIES OF IT, THEY ARE DESIGNATING

 6 AND SAYING, WE WANT COPIES OF ALL OF YOUR PRESS RELEASES, YOU

 7 OUGHT TO BE ABLE TO PRODUCE THEM.  AND YOU PROBABLY OUGHT TO BE

 8 ABLE TO PRODUCE THEM FAIRLY EASILY IN ELECTRONIC FORMAT.

 9    I MEAN, I DON'T SEE THAT THIS IS LIKE SOME INCREDIBLE

10 BURDEN HERE.  AND IF THEY DOWNLOAD THEM AND THEY PRODUCE THEM

11 IT WOULD SEEM TO ME -- AND THEY ASK YOU TO AUTHENTICATE THEM IN

12 A REQUEST FOR ADMISSION IT'S ACTUALLY GOING TO COST YOU MORE

13 BECAUSE THEN YOU ARE GOING TO HAVE TO EXAMINE EVERYTHING THAT

14 THEY HAVE DOWNLOADED AND COMPARE IT TO WHAT IS ON YOUR WEB SITE

15 IN ORDER TO DETERMINE WHETHER OR NOT IT'S AUTHENTIC.

16    SO, YOU KNOW, I'M GETTING BACK TO WHAT JUDGE SEITZ HAS

17 REPEATEDLY EMPHASIZED IN MANY CASES, AND I THINK SHE MENTIONED

18 IT IN THIS CASE IS, WHEN YOU LOOK AT THE PRACTICALITIES OF WHAT

19 YOUR OBJECTIONS REALLY ARE AND THE PARTIES NEED TO TRY TO WORK

20 TOGETHER ON IT.  IF THERE IS SOME COST SHIFTING THAT NEEDS TO

21 BE DONE OR SOME EXPENSE THAT NEEDS TO BE BORNE, TALK ABOUT IT.

22    SO I DON'T UNDERSTAND HOW IT'S LESS BURDENSOME FOR YOU

23 TO HAVE TO RESPOND TO A REQUEST FOR ADMISSIONS ON

24 AUTHENTICATION.  SO MAYBE YOU CAN HELP ME WITH THAT.

25    MR. PANKRATZ:  YOUR HONOR, THANK YOU.  YOU MADE A VERY

1    GOOD POINT.  I THINK ONE LAST THING ON THAT.

2         I THINK THEIR REQUEST FOR AUTHENTICATION ON A VERY

3    NARROW SET OF DOCUMENTS THAT (UNINTELLIGIBLE) YOUR HONOR GIVEN

4    THE POINT THAT YOU'RE MAKING RIM IS WILLING TO PRODUCE I

5    SUPPOSE ITS BASICALLY ITS ENTIRE DATABASE OF PRESS RELEASES,

6    JUST WHAT THEY'VE ASKED FOR.  WHILE WE BELIEVE THAT'S

7    OVERBURDEN SOME WE WILL DO THAT.

8         THE COURT:  OKAY.  THANK YOU.  SO I'M JUST GOING TO

9    ORDER -- HOW LONG WILL IT TAKE YOU TO DO THAT?

10        MR. PANKRATZ:  I WILL CHECK WITH MY CLIENT AND LET YOU

11   KNOW (UNINTELLIGIBLE) REPORT TO THE COURT OR REPORT TO THE

12   OTHER SIDE?

13        THE COURT:  WELL, I'M GOING TO ENTER AN ORDER -- I

14   MEAN, THE WAY I'M GOING TO DO IT THEN IS, I'M GOING TO ENTER AN

15   ORDER AND FIX A DATE.  THAT'S THE POINT OF THIS HEARING.

16        IF THERE IS SOME PROBLEM AND IF IT TAKES YOU LONGER TO

17   DO IT OR THERE IS SOME UNFORESEEN DIFFICULTY, OR IT'S

18   UNREASONABLE YOU CAN TALK TO THE OTHER SIDE, MR. CARLSON, AND

19   I'M SURE HE WILL BE REASONABLE BECAUSE THE LAST THING HE WILL

20   WANT TO DO IS COME BACK BEFORE ME OBJECTING TO AN EXTRA WEEK TO

21   PRODUCE SOMETHING ON THIS SCHEDULE.

22        BUT I WILL -- I AM GOING TO ORDER IT -- IT WOULD JUST

23   SEEM TO ME THAT IF IT'S AS EASILY ACCESSIBLE AS YOU SAY IT IS,

24   I TYPICALLY WOULD GIVE, YOU KNOW, 1O DAYS TO PRODUCE SOMETHING

25   LIKE THIS.  SO WHAT I'M JUST GOING TO DO JUST FOR EASE, YOU

1 KNOW, THAT WOULD BE ROUGHLY -- I HATE IT WHEN I HAVE TO GO

2 BETWEEN MONTHS TO CALCULATE DAYS BECAUSE MY CALENDAR DOESN'T

3 LET ME DO THAT.

4 LET ME SEE. ONE WEEK WOULD BE AUGUST 2ND. I WILL

5 JUST SAY -- I'M GOING TO GIVE YOU TWO WEEKS, AUGUST 9TH.

6 MR. PANKRATZ: THANK YOU, YOUR HONOR.

7 THE COURT: MR. CARLSON, IS THAT A PROBLEM?

8 MR. CARLSON: IT IS NOT.

9 THE COURT: SO JUST PRODUCE IT BY AUGUST THE 9TH.

10 AGAIN, IF THERE IS SOMETHING THAT I'M NOT AWARE OF AND

11 YOU NEED MORE TIME, YOU KNOW, YOU CAN COME BACK TO ME.

12 WHAT IS YOUR NEXT ONE --

13 MR. CARLSON: THE NEXT ONE --

14 THE COURT: -- MR. CARLSON?

15 MR. CARLSON: THE NEXT ONE IS REQUEST FOR PRODUCTION

16 NUMBER 22.

17 I MENTIONED THAT THEY HAVE IDENTIFIED APPROXIMATELY 70

18 MODELS THAT MAY CONTAIN THE FEATURES THAT WE SAY ARE THE

19 FEATURES OF THE PATENT IN SUIT.

20 WE HAVE IN THIS REQUEST NUMBER 22 ASKED FOR THE

21 ACTUAL -- YOU KNOW, THE ACTUAL DEVICES, THE ACTUAL SAMPLE, SO

22 THAT WE CAN TEST, ANALYZE, DISASSEMBLE IF APPROPRIATE, AND

23 PHOTOGRAPH.

24 NOW, THEIR -- AND, BY THE WAY, WE HAVE ALSO OFFERED TO

25 PAY THE COST FOR THOSE ITEMS. NOW, WE ARE NOT WILLING TO PAY

1   RETAIL BUT WE ARE WILLING TO PAY WHOLESALE FOR THOSE UNITS.

2        THE RESPONSE HAS BEEN, WELL, THEY ARE AVAILABLE FOR

3   YOU TO COME AND INSPECT.  BUT THAT'S NOT ADEQUATE.  SO THE

4   RESPONSE IS THEY EXIST, AND THE RESPONSE IS, YOU CAN COME AND

5   LOOK AT THEM AND INSPECT THEM.  BUT THAT'S NOT ADEQUATE.  WE

6   NEED TO TEST, WE NEED TO ANALYZE, AND IN SOME CASES WE MAY EVEN

7   NEED TO DISASSEMBLE.  AND, IN ANY EVENT, WE ARE GOING TO NEED

8   TO PHOTOGRAPH.

9        THE COURT:  OKAY.  LET ME HEAR FROM YOU ON THAT ONE,

10  MR. PANKRATZ.

11       MR. PANKRATZ:  CERTAINLY, YOUR HONOR.

12       WE ARE ACTUALLY SURPRISED THERE A DISPUTE HERE ON THE

13  VERY FIRST CALL WITH RESPECT TO THIS.  I MADE CLEAR TO THEM

14  THAT RIM WOULD LIKE TO SELL DEVICES, AND IF THEY LIKE TO

15  IDENTIFY SPECIFIC ONES THAT THEY WERE EITHER UNABLE TO OR

16  UNWILLING TO PURCHASE THROUGH PUBLIC CHANNELS THAT WE WOULD

17  SELL THEM THOSE DEVICES.

18       THE ISSUE OF OUT OF DATE MODELS AND THINGS THAT THERE

19  MAY BE VERY LIMITED SUPPLY, MAYBE ONE OR TWO MODELS REMAINING

20  WITHIN RIM, I MADE CLEAR WE COULDN'T JUST TURN OVER OUR LAST

21  MODELS OF THESE THINGS (UNINTELLIGIBLE) BREAK APART AS THEY

22  SUGGESTED HERE.  THESE ARE RIM'S HISTORICAL DEVICES TO THE

23  EXTENT THAT (UNINTELLIGIBLE).

24       THE COURT:  OKAY.  SO I GATHER -- SO WHAT IS -- DO YOU

25  HAVE A DISPUTE -- I MEAN, YOU'RE SAYING YOU ARE WILLING TO SELL

1  THEM IF THEY DON'T WANT TO BUY THEM IN THE PUBLIC MARKET.  ARE

2  YOU WILLING TO SELL THEM AT WHAT YOUR COST IS?

3        MR. PANKRATZ:  YES, YOUR HONOR.

4        THE COURT:  OKAY.  SO IT WOULD BE A WHOLESALE PRICE OR

5  IT'S ACTUALLY ABOVE YOUR COST I ASSUME BECAUSE PROBABLY YOU

6  MAKE A PROFIT WHEN YOU SELL THINGS AT WHOLESALE I WOULD ASSUME.

7        MR. CARLSON:  WE ARE WILLING TO PAY WHOLESALE.

8        THE COURT:  SO WHAT I WOULD SAY THEN IS, IT SEEMS LIKE

9  YOU ARE WILLING TO SELL IT WHOLESALE, THEY ARE WILLING TO BUY

10 IT WHOLESALE AND WE MAY BE DOWN POSSIBLY, WE DON'T EVEN KNOW

11 THIS, TO ONE OR TWO -- A SITUATION WHERE IT'S CONCEIVABLE THAT

12 THERE WILL BE SOME OLDER MODELS WHERE THERE IS ONLY ONE OR TWO

13 AVAILABLE.

14        SO IT WOULD SEEM TO ME THAT YOU NEED TO PROVIDE WHAT

15 IT IS YOU'VE AGREED TO PROVIDE AT WHOLESALE, AND THEN IF THERE

16 ARE A LIMITED NUMBER OF MODELS LEFT THEN THE PARTIES OUGHT TO

17 CONFER REGARDING A JOINT INSPECTION IF IT'S GOING TO BE

18 DESTRUCTIVE TESTING, JUST LIKE YOU WOULD IN ANY, YOU KNOW,

19 NORMAL CASE WHERE YOU HAVE A PRODUCT AT ISSUE --

20        MR. CARLSON:  YES.

21        THE COURT:  -- USUALLY HAPPENS IN PRODUCT LIABILITIES

22 CASES WHERE YOU WANTED TO EXAMINE --

23        MR. CARLSON:  THE AUTOMOBILE.

24        THE COURT:  EXACTLY.  OR THE LADDER, OR WHATEVER IT

25 IS.

1        MR. CARLSON:  YES.

2        THE COURT:  SO IT WOULD JUST SEEM TO ME THAT THAT

3   WOULD BE A REASONABLE WAY OF DOING IT, BECAUSE RIGHT NOW WE

4   DON'T EVEN KNOW FOR SURE THAT THERE ARE ANY DEVICES THAT ARE OF

5   SUCH LIMITED AVAILABILITY.

6        ISN'T THAT RIGHT, MR. PANKRATZ?

7        MR. PANKRATZ:  WE HAVE BEEN INVESTIGATING AND I'M NOT

8   SURE THERE ARE AT THIS POINT PRODUCTS THAT WOULD FALL INTO THAT

9   CATEGORY.  BUT, YOUR HONOR, IF THEY DO WE WOULD CERTAINLY AGREE

10  TO MEET WITH THE OTHER SIDE AND TRY TO AND FIGURE OUT THE BEST

11  WAY TO HANDLE IT AT THAT POINT.

12       THE COURT:  OKAY.  SO WHY DON'T WE DO THAT THEN AND,

13  YOU KNOW, YOU CAN COME BACK.

14       IS THERE ANYTHING ELSE ON THIS REQUEST?  YOU SEEM TO

15  BE WANTING TO SAY SOMETHING, MR. CARLSON.

16       MR. CARLSON:  THANK YOU, YOUR HONOR.

17       ONE OF THE DOCUMENTS YOU HAVE IS OUR FIRST -- NOT OURS

18  RIM'S FIRST AMENDED OBJECTIONS AND RESPONSES TO THE FIRST SET

19  OF INTERROGATORIES.  WHEN YOU TURN TO PAGE SEVEN OF THAT

20  DOCUMENT THERE IS A CHART THAT BEGINS THERE AND CONTINUES OVER

21  TO THE NEXT PAGE ON TO PAGE NINE.  THAT'S THE MODELS AND THE

22  MODEL NUMBERS.

23       THE COURT:  OKAY.

24       MR. CARLSON:  SO WE KNOW THE MODEL -- THEY HAVE

25  PROVIDED US WITH THE MODEL NUMBERS.

 1          THE COURT:  RIGHT.

 2          MR. CARLSON:  THE ONES WE ARE LOOKING FOR.  YOU KNOW,

 3 FOR THOSE THAT ARE NOT, YOU KNOW, ONE OF THE LAST FIVE THAT

 4 STILL EXIST, YOU KNOW, I THINK THEY SHOULD BE ABLE TO PRODUCE

 5 THEM TO US QUITE PROMPTLY.

 6          FOR THOSE THAT MAY BE LIKE ONE OF THE LAST FIVE THAT

 7 EXIST MAYBE THEY CAN GIVE US A LIST AND, YOU KNOW, DEPENDING ON

 8 CERTAIN OTHER THINGS WE MAY OR MAY NOT EVEN WANT TO LOOK AT THE

 9 ITEM.  WE PROBABLY WILL BUT WE MAY OR MAY NOT WANT TO.

10          I SAY THAT BECAUSE ONE OF THE THINGS WE ARE GOING TO

11 GETS TO NEXT IS SALES DATA.  AND IF AN ITEM HAD VERY, VERY,

12 VERY LITTLE SALES, YOU KNOW, WE MAY OR WE MAY NOT TO NEED TO

13 ANALYZE IT.

14          THE COURT:  WELL, I MEAN, IT SEEMS TO ME THAT THE

15 ORDER THAT I HAVE JUST STATED -- AND AGAIN, I LIKE TO TELL THE

16 PARTIES WHERE I'M GOING AND THAT WAY YOU CAN TELL ME WHERE I'M

17 TOTALLY OFF BASE OR HAVE MISAPPREHENDED THE ISSUES.

18          MR. CARLSON:  OKAY.

19          THE COURT:  SO IT WOULD SEEM TO ME THAT THEY HAVE

20 AGREED TO PROVIDE THE DEVICES UNLESS THEY HAVE A SHORTAGE WHERE

21 THEY THINK THEY WILL BE PREJUDICED.  AND, OF COURSE, I AM NOT

22 GOING TO GET INTO RIGHT NOW HOW MANY DEVICES THAT IS, WHETHER

23 IT IS, YOU KNOW, THREE, OR FOUR, OR FIVE, 1O, 20, BECAUSE I'M

24 ALSO -- I ALSO RECOGNIZE THAT THERE IS A POSSIBILITY THAT THERE

25 MAY BE OTHER FOLKS WHO MAY THINK THAT THEIR PATENTS ARE

 1  INFRINGED.  AND, SO THERE MAY BE OTHER LITIGATION SO I AM NOT

 2  GOING TO SAY, YOU HAVE TO GET DOWN TO YOUR LAST ITEM.

 3          MR. CARLSON:  CORRECT.

 4          THE COURT:  THESE DEVICES I'M SURE THEY USE A LOT OF

 5  PATENTS AND A LOT OF METHODS.  SO I DON'T THINK I NEED TO

 6  DECIDE THAT RIGHT NOW.

 7          WHAT I WANT TO DO IS, THEY HAVE AGREED AND THEY WILL

 8  PRODUCE MODELS WHICH YOU WILL -- FOR WHICH YOU WILL PAY THEM

 9  THE WHOLESALE PRICE OF.

10          IF THERE ARE ANY MODELS THAT YOU DO NOT WANT TO

11  PRODUCE, MR. PANKRATZ, YOU WILL TALK TO MR. CARLSON ABOUT IT

12  AND TRY TO WORK OUT A PROTOCOL THAT IS SATISFACTORY TO BOTH

13  SIDES WITH RESPECT TO THOSE ITEMS.  BUT IT DOES SEEM TO ME THAT

14  THEY OUGHT TO BE ABLE TO GET THEM FROM YOU BECAUSE YOU HAVE THE

15  SAME AUTHENTICATION PROBLEMS THAT YOU MIGHT HAVE IF THEY GOT

16  THEM FROM BEST BUY OR AMAZON, YOU KNOW, ON A DELIVERY.  AND,

17  SO --

18          MR. CARLSON:  OR EBAY.

19          THE COURT:  OR EBAY FOR THAT MATTER.  SO I THINK

20  THAT'S THE BEST WAY OF RESOLVING THIS.

21          YOU KNOW, IF YOU HAVE ANY FOLLOW-UP DISPUTES YOU JUST

22  SET IT DOWN ON A CALENDAR AND WE WILL -- HOPEFULLY WE WON'T BE,

23  YOU KNOW, DELAYED IN SETTING IT.  AND SMALL DISPUTES, DISCREET

24  SMALL DISPUTES, I HANDLE TELEPHONICALLY.  SOMETIMES PARTIES

25  INTERRUPT THE DEPOSITION AND TALK TO ME JOINTLY SO THEN WE

 1  DON'T HAVE TO WASTE TIME OR CAUSE UNDUE EXPENSE FOR YOUR

 2  CLIENTS.

 3          MR. CARLSON:  NOW, YOUR HONOR, I HAVE TO ADD THAT

 4  THERE IS SOME URGENCY ON THIS BECAUSE ON SEPTEMBER 7TH THE

 5  PARTIES HAVE DUE THEIR CONTENTIONS OF THE TERMS IN THE CLAIMS.

 6          AND, SO WE HAVE TO DEFINE -- WE HAVE TO GIVER OUR

 7  CONTENTIONS OF WHAT OUR DEFINITIONS ARE OF THE TERMS THAT ARE

 8  IN THE CLAIMS.  SO THAT'S DUE SEPTEMBER 7TH.  AND, SO THERE IS

 9  SOME URGENCY, YOU KNOW, TO GET THESE ITEMS.

10          THE COURT:  OKAY.  WHEN DO YOU --

11          MR. PANKRATZ:  YOUR HONOR, IF I CAN ADDRESS THAT.

12          WE WILL CERTAINLY MAKE EVERY EFFORT TO PRODUCE THESE

13  AS QUICKLY AS POSSIBLE, BUT I THINK IT'S (UNINTELLIGIBLE) ALL

14  PRODUCTS TO DECIDE ON WHAT THE CLAIM TERMS MEAN.  I THINK

15  THAT'S (UNINTELLIGIBLE).

16          THE COURT:  OKAY.  WELL, YOU CAN ARGUE THAT TO JUDGE

17  SEITZ.  BUT WHAT I WANT TO KNOW -- FIRST I'M GOING TO ASK,

18  MR. CARLSON, WHEN DO YOU WANT THEM BY.

19          THEN, MR. PANKRATZ, I AM GOING TO ASK YOU WHY YOU

20  CAN'T PRODUCE THEM BY THAT DATE.  NOW IF, HE SAYS TOMORROW I AM

21  PROBABLY GOING TO GIVE A LOT OF WEIGHT TO WHAT YOU SAY, MR. --

22          MR. CARLSON:  I WAS GOING TO SAY 20 DAYS

23          THE COURT:  OKAY.  TWENTY DAYS?  AND THAT'S --

24          MR. PANKRATZ:  YOUR HONOR, THAT SOUNDS REASONABLE AND

25  WE WILL MAKE EVERY EFFORT TO COMPLY WITH THAT.  IF IT LOOKS AS

1 THOUGH WE CAN'T WE WILL TRY TO APPROACH OPPOSING COUNSEL TO

2 REACH AN AGREEMENT FOR AN EXTENSION, BUT WE WILL MAKE EVERY

3 EFFORT TO PRODUCE THOSE IN THE 20 DAYS.

4 THE COURT:  I THINK THAT PUTS US -- I ALWAYS LIKE TO

5 GIVE DATES.  I THINK THAT PUTS US RIGHT AT AUGUST 15TH, IS

6 THAT -- SO I WILL JUST SAY TO PRODUCE THOSE BY AUGUST 15TH.

7 LET THEM KNOW.  AS SOON AS YOU FIGURE OUT THAT THERE

8 IS SOMETHING THAT YOU CAN'T PRODUCE YOU OUGHT TO LET THEM KNOW

9 THAT THIS IS A LIMITED SUPPLY.  BUT I WILL JUST SAY THAT THOSE

10 NEED TO BE PRODUCED BY AUGUST 15TH.

11 YOU KNOW, I DON'T HAVE ANY PLANS TO BE UNAVAILABLE

12 AROUND THAT TIME SO IF THERE IS SOME DISPUTE ABOUT IT I CAN

13 PROBABLY HEAR YOU, YOU KNOW, EITHER THE 16TH OR THE -- YOU

14 KNOW, THE 20TH, 21ST.  THE 17TH ISN'T A PARTICULARLY GOOD DAY

15 FOR ME BUT I WILL TRY TO GET YOU ALL IN QUICKLY TO RESOLVE

16 THAT.

17 MR. CARLSON:  ALL RIGHT.  THE NEXT ITEM IS

18 INTERROGATORY NUMBERS FOUR, NINE, AND 10.  THESE ALL FALL INTO

19 THE SAME CATEGORY.

20 NUMBER FOUR REQUESTED SALES DATA.  NUMBER NINE

21 REQUESTED THE DETAILS OF ACTIONS THAT THEY TOOK TO AVOID

22 INFRINGEMENT AFTER LEARNING OF THE PATENT.  AND NUMBER 10

23 SOUGHT OPINIONS OF COUNSEL THAT THEY RELIED ON.

24 ALL THESE DERIVE FROM DEFENSES THAT THEY HAVE

25 ASSERTED.  IN RESPONSE TO INTERROGATORIES FOUR, NINE, AND 10

1   THE DEFENDANT SAID THAT THE -- THE ANSWERS TO THESE

2   INTERROGATORIES MAY BE ASCERTAINED FROM DOCUMENTS THAT WE ARE

3   GOING TO PRODUCE IN A ACCORDANCE WITH RULE 33(D), WHICH IS A

4   PERFECTLY APPROPRIATE RESPONSE.

5        HOWEVER, UNDER OUR RULE RULES 26(G)(4) CAPITAL (D)

6   THEY HAVE TWO WEEKS TO GIVE US THE DOCUMENTS, AND THAT TWO

7   WEEKS EXPIRED ON JULY 3, 2012.

8        THE COURT:  SO I GATHERED FROM MY READ OF THIS THAT

9   THE ISSUE IS WHEN THEY ARE GOING TO PRODUCE THE DOCUMENTS, IS

10  THAT -- I MEAN -- AND, SO LET ME JUST ASK YOU, MR. PANKRATZ,

11  WHEN ARE YOU GOING TO PRODUCE THESE DOCUMENTS?

12       MR. PANKRATZ:  YOUR HONOR, THIS IS SOMETHING THAT WE

13  TRIED TO WORK OUT WITH THEM.  ON THESE THREE REQUESTS, TWO OF

14  THEM BASICALLY SEEK INFORMATION THAT'S EITHER NOT RELEVANT OR

15  IT IS PRIVILEGED IN THIS CASE.  AND, SO THERE ARE NO DOCUMENTS

16  AT THIS POINT TO PRODUCE.

17       THE LAST OF THOSE THREE, WHICH IS SALES INFORMATION,

18  WE TRIED TO WORK OUT AN AGREEMENT BECAUSE PRETTY MUCH EVERY

19  SINGLE OTHER PATENT CASE THAT PROCEEDS IN THIS COUNTRY YOU

20  DON'T TRY AND GET ALL THE SALES INFORMATION IN THE FIRST WEEK

21  OR TWO OR EVEN MONTH OF THE CASE.

22       DISCOVERY IN THIS CASE IS OPEN UNTIL MAY OF 2013.

23  WHAT WE PROPOSED IS THAT WE FIRST TRY AND RESOLVE WHAT PRODUCTS

24  ARE ACTUALLY AT ISSUE BEFORE RIM ATTEMPTED TO DISCERN WHAT THE

25  SALES INFORMATION RELEVANT TO THOSE PRODUCTS WAS.

 1      THAT'S OUR POSITION IS THAT WE ARE NOT REFUSING TO

 2  PRODUCE ANY OF THIS INFORMATION WE JUST BELIEVE THAT IT'S

 3  PREMATURE, AND THAT THE PARTIES WORK OUT A REASONABLE TIME

 4  APPROPRIATE TO THE (UNINTELLIGIBLE) IN THIS CASE TO PRODUCE

 5  THAT INFORMATION.

 6      THE COURT:   OKAY.   SO WITH RESPECT TO THE SALES DATA,

 7  WHAT'S -- I MEAN, IT SEEMS FAIR ENOUGH THAT THEY NEED -- YOU

 8  NEED TO IDENTIFY THE PRODUCTS THAT ARE AT ISSUE BECAUSE

 9  OBVIOUSLY IF THEY ARE NOT AT ISSUE THE SALES DATA IS

10  IRRELEVANT.

11      MR. CARLSON:   CORRECT.   AND, SO WHAT WE -- FIRST OF

12  ALL, OUR DEFINITION OF THE PRODUCTS WAS LIMITED TO, YOU KNOW --

13  WE USE TERMS THAT RELATE TO THE CLAIMS THAT ARE AT ISSUE IN THE

14  CASE.   AND, SO WE LIMITED THE PRODUCTS TO THE FEATURES THAT WE

15  SAY ARE THE FEATURES OF THE PATENTS IN SUIT.   BUT THEN THEY

16  GAVE US THE LIST OF 70.   AND, SO WE HAVE SAID TO THEM, LOOK,

17  JUST LIMIT IT TO THE LIST OF 70.

18      THE COURT:   OKAY.

19      MR. PANKRATZ:   AND, YOUR HONOR, MAY I RESPOND?

20      THE COURT:   OKAY.   AND WHY DON'T YOU ELL ME WHEN -- I

21  THINK THEY'RE SAYING THESE 70 PRODUCTS ARE AT ISSUE AND THESE

22  ARE THE 70 PRODUCTS WE WANT THE SALES DATA FOR, AND THOSE ARE

23  THE 70 --

24      MR. PANKRATZ:   YES, YOUR HONOR.   AND -- MY APOLOGIES.

25      WHAT I SUGGESTED TO THEM WAS THAT WE GIVE THEM A

1  GENERAL SET OF INFORMATION FOR THOSE 70, BUT KNOWING THAT AS

2  EVERY PATENT CASE PROGRESSES THERE ARE MORE SALES GOING ON AND

3  THAT WE WOULD NEED TO PROVIDE UPDATED INFORMATION.

4        SO I SUGGESTED TO THEM THAT WE REACH SOME AGREEMENT AS

5  TO WHAT INFORMATION THEY PRECISELY WANTED AND NEEDED NOW VERSUS

6  WHEN WE NEEDED TO GET THEM BASICALLY THE FULL SET OF

7  INFORMATION.  AND, SO YOUR HONOR AGAIN WE ARE NOT REFUSING TO

8  PRODUCE DOCUMENTS WHAT WHICH ARE TRYING TO DO IS ESTABLISH A

9  SUFFICIENT WAY TO GET THE INFORMATION PRODUCED.

10        THE COURT:  WELL, I MEAN, IT WOULD SEEM TO ME -- I

11  MEAN, THE WAY I'VE ALWAYS, YOU KNOW, SEEN THIS DONE, AND I WILL

12  BE THE FIRST TO TELL YOU I HAVE LIMITED INVOLVEMENT WITH PATENT

13  CASES BUT I HAVE HAD LIKE LOTS OF INVOLVEMENT WITH OTHER OF

14  OTHER CASES.  AND TYPICALLY IF IT IS AN ONGOING, YOU KNOW -- IF

15  IT IS ONGOING DAMAGES, LET'S SAY, YOU USE A DATE TO CUTOFF.

16        WE WANT ALL SALES INFORMATION THROUGH THE PRESENT, OR

17  THROUGH THE END OF THE LAST QUARTER, OR HOWEVER IT IS YOU

18  COLLECT IT AND THEN YOU SUPPLEMENT LATER ON.  I MEAN, I HAVEN'T

19  SEEN IT BROKEN DOWN IN EXACTLY THE WAY THAT YOU'RE -- THAT

20  YOU'RE TALKING ABOUT, AND I'M NOT SURE I UNDERSTAND, YOU KNOW,

21  WHAT IT IS YOU PROPOSE TO PROVIDE.

22        MR. CARLSON:  WE DIDN'T EITHER.

23        THE COURT:  SO MAYBE, MR. PANKRATZ, YOU CAN -- I MEAN,

24  WHY SHOULDN'T IT BE THROUGH THE END OF THE LAST QUARTER, OR

25  HOWEVER IT IS YOU USE -- YOU DO YOUR TALLYING.  I DON'T KNOW.

 1          MR. PANKRATZ:  YOUR HONOR, THAT IS ACCEPTABLE AND RIM

 2  -- AGAIN WE WERE HOPEFUL THAT THE COURT HELD IT WOULD NOT BE

 3  NEEDED BECAUSE WE DID NOT THINK THAT WE WERE REFUSING TO

 4  PRODUCE ANYTHING THEY WERE ASKING FOR.  WE SIMPLY ASKED ON

 5  TRYING TO FIGURE OUT WHAT WE NEEDED TO PRODUCE NOW VERSUS WHAT

 6  MIGHT BE MORE APPROPRIATE DOWN THE ROAD.

 7          THE COURT:  OKAY.  SO WHAT CAN YOU PRODUCE NOW AND

 8  WHAT DO YOU THINK WOULD BE MORE APPROPRIATE TO PRODUCE LATER ON

 9  DOWN THE ROAD?

10          MR. PANKRATZ:  YOUR HONOR, SINCE THE SET OF PRODUCTS

11  AT ISSUE IS NOT EVEN DEFINED AT THIS POINT MY SUGGESTION TO

12  THEM WAS TO PROVIDE GENERAL REVENUE INFORMATION WITH RESPECT TO

13  ALL OF THE PRODUCTS THAT (UNINTELLIGIBLE) IDENTIFIED THAT WE

14  THOUGHT WERE POTENTIALLY RELEVANT BASED ON THEIR

15  (UNINTELLIGIBLE) REQUESTS.

16          AND, SO, YOUR HONOR, WE WOULD SUGGEST THAT RIM PROVIDE

17  GENERAL INFORMATION WITH RESPECT TO THOSE PRODUCTS.  AND THEN

18  IF THE CASE IS ACTUALLY -- AS THE CASE PROCEEDS THEY WILL

19  IDENTIFY THE SPECIFIC PRODUCTS -- IN FACT, THEY WERE REQUIRED

20  TO DO THAT AND, YOUR HONOR, THIS WILL BE A DISPUTE I BELIEVE

21  UPCOMING.  THEY DID NOT MEET THEIR REQUIREMENTS FOR PROPERLY

22  IDENTIFYING ACCUSING PRODUCTS.  WE THINK THAT'S TIED TO THIS.

23          WE THINK THAT AS SOON AS WE DO HAVE THE FULL SET OF

24  IDENTIFIED PRODUCTS DOWN THE ROAD WE WILL BE ABLE TO THEN TO

25  THE EXTENT THE GENERAL INFORMATION WE PROVIDED THEM WAS NOT

 1  EXACTLY WHAT THEY WANTED THAT WE CAN BROADEN THAT OUT AND GET

 2  THEM EXACTLY WHAT THEY NEED.

 3          THE COURT:  WELL, I DON'T UNDERSTAND WHAT YOU'RE

 4  TALKING ABOUT WHEN YOU'RE SAYING GENERAL INFORMATION.  WHAT IS

 5  GENERAL INFORMATION CONSIST OF?

 6          MR. PANKRATZ:  REVENUE INFORMATION FOR THE IDENTIFIED

 7  PRODUCTS, YOUR HONOR.

 8          THE COURT:  SO REVENUE BUT NOT COST INFORMATION, IS

 9  THAT --

10          MR. PANKRATZ:  WELL, THERE IS --

11          THE COURT:  I DON'T --

12          MR. PANKRATZ:  -- THEIR REQUEST.

13          THE COURT:  WELL, THEY WANT SALES SUMMARIES INCLUDING

14  THE TOTAL SALES IN DOLLARS AND UNITS.  THE UNIT SELLING PRICE,

15  GROSS AND NET PROFIT PER UNIT, THE COST PER UNIT SOLD,

16  INCLUDING SEPARATELY IDENTIFYING ALL COSTS FOR THE PRODUCT.  IN

17  OTHER WORDS, NOT JUST A LUMP SUM COST.

18          I MEAN, I DON'T KNOW HOW YOU KEEP YOUR RECORDS.  I

19  DON'T KNOW WHETHER THIS -- HOW BURDENSOME THIS IS.  I MEAN,

20  THIS SEEMS TO BE PRETTY STANDARD STUFF.  IT DOESN'T SEEM TO

21  BE --

22          MR. PANKRATZ:  YES, YOUR HONOR.

23          WE ARE ACTUALLY WILLING TO PRODUCE IT, AND WHAT WE

24  WERE HOPING TO DO IS WITHOUT COURT INVOLVEMENT FIGURE OUT

25  EXACTLY WHAT THEY -- WHAT THEY ARE LOOKING FOR NOW AND PROVIDE

1 THAT TO THEM.

2 THE COURT:  I MEAN, ONE OF THE PROBLEMS IN A CASE KIND

3 OF -- I SUPPOSE AS A WHOLE IS THE PARTIES DIFFERING VIEWS ON

4 THE SPEED AT WHICH IT SHOULD PROGRESS WHICH STARTED PRIOR TO

5 THE SCHEDULING CONFERENCE IT LOOKS LIKE AND JUDGE SEITZ PRETTY

6 MUCH WENT IN THE MIDDLE BETWEEN THE PLAINTIFFS DESIRE FOR VERY

7 SPEEDY -- YOU KNOW, A VERY SPEEDY TRACK AND YOUR DESIRE FOR A

8 MORE LEISURELY PACE.

9 BUT I DON'T SEE -- YOU'VE IDENTIFIED 70 PRODUCTS.  MY

10 GUESS IS IT'S VERY EASY TO JUST GENERATE THIS INFORMATION FOR

11 THOSE 70 PRODUCTS BECAUSE RIGHT NOW THOSE ARE THE 70 PRODUCTS

12 THAT ARE AT ISSUE.

13 NOW, IT'S POSSIBLE THAT THEY WILL NARROW THOSE 70

14 PRODUCTS DOWN.  I DON'T KNOW THAT.  AND IT'S NOT CLEAR TO ME

15 HOW THERE IS A DIFFERENTIATION AMONG THOSE 70 PRODUCTS.  IN

16 OTHER WORDS, HOW THEY WOULD BE NARROWED DOWN UNLESS IT'S DONE

17 AFTER THE PRODUCTS ARE PRODUCED AND AFTER THERE IS AN EXPERT

18 EXAMINATION OF THE PRODUCT AND A DESIRE TO GO, YOU KNOW -- AND

19 AFTER THERE IS A CLAIM CONSTRUCTION FOR THAT MATTER.

20 MR. CARLSON:  YES.

21 THE COURT:  SO PERHAPS YOU CAN HELP ME WITH THAT,

22 MR. PANKRATZ.  I DON'T KNOW THE PACE AT WHICH -- I DON'T KNOW

23 THE PACE AND I DON'T KNOW WHY WE SHOULD BE LIMITING IT AT THIS

24 POINT.

25 MR. PANKRATZ:  YOUR HONOR, WE ARE NOT TRYING TO LIMIT

 1  IT IN ANY WAY.  WHAT WE ARE TRYING TO DO IS GET THEM THE

 2  INFORMATION THAT IS APPROPRIATE.

 3       WHAT I PROPOSE, YOUR HONOR, WE PRODUCE WITHIN 10

 4  DAYS -- AND AGAIN, THIS IS SOMETHING THAT WE WERE TRYING TO

 5  WORK OUT WITH THEM AND OFFER WITH THEM AND WE DON'T BELIEVE WE

 6  NEEDED COURT INTERVENTION.  BUT WE WILL AGREE WITHIN 10 DAYS TO

 7  PRODUCE SALES INFORMATION WITH RESPECT TO THOSE IDENTIFIED

 8  PRODUCTS.

 9       MR. CARLSON:  OKAY.

10       THE COURT:  OKAY.  IS THAT FINE?

11       MR. CARLSON:  WELL, YES.

12       THE COURT:  OKAY.  SO WHY DON'T YOU PRODUCE -- AND I'M

13  TRYING TO THINK HOW I COUNTED -- I'M NEVER SURE WHETHER IT'S 10

14  BUSINESS DAYS, 10 CALENDAR DAYS.  SO I THINK IT'S AUGUST 9TH IS

15  THE DATE I HAVE BEEN USING FOR THE SHORT TIME FRAMES -- OR FOR

16  THE GENERAL DISCOVERY.

17       SO WHY DON'T YOU PRODUCE BY AUGUST 9TH THE SALES

18  INFORMATION.  IF YOU FEEL YOU NEED MORE INFORMATION OR WHAT

19  THEY HAVE PRODUCED IS NOT SUFFICIENT FOR YOUR CURRENT NEEDS YOU

20  CAN COME BACK TO ME.  IF WHAT THEY PRODUCE IS SUFFICIENT YOU

21  CAN RESERVE THE RIGHT TO SEEK MORE DETAILED INFORMATION AT AN

22  APPROPRIATE TIME.  DOES THAT MAKE SENSE?

23       MR. CARLSON:  YES, IT DOES.

24       THE COURT:  OKAY.  AND, MR. PANKRATZ?  SO YOU CAN

25  PRODUCE --

 1               MR. PANKRATZ:  YES.  ABSOLUTELY, YOUR HONOR.

 2               THE COURT:  -- WITHIN 10 DAYS.  SO THAT'S AS TO FOUR.

 3               NOW WE GO TO REQUESTS --

 4               MR. CARLSON:  NINE AND 10.

 5               I THOUGHT I HEARD MR. PANKRATZ SAY THAT THOSE --

 6  SOMETHING ABOUT IRRELEVANCY.

 7               THE COURT:  I AM NOT SURE.  I THOUGHT I HEARD

 8  SOMETHING ABOUT ATTORNEY/CLIENT PRIVILEGE.

 9               MR. PANKRATZ:  YES, YOUR HONOR.

10               I THINK BOTH OF THOSE -- AND LET ME START WITH

11  INTERROGATORY NUMBER 10 WHICH ASKS FOR OPINIONS OF COUNSEL.

12               THESE BY DEFINITION WOULD BE PRIVILEGED DOCUMENTS.

13  WILLFULNESS IS NOT AT ISSUE IN THIS CASE.  AND, SO AT THIS

14  POINT (UNINTELLIGIBLE) COUNSEL WILL REMAIN PRIVILEGED.  AT SOME

15  POINT DOWN THE ROAD SHOULD WI-LAN FIND INFORMATION THAT IT

16  BELIEVES IS SUFFICIENT TO PLEAD WILLFUL INFRINGEMENT RIM MAY

17  CHOSE TO WAIVE IN A LIMITED FASHION ATTORNEY/CLIENT PRIVILEGE

18  AND PRODUCE THE OPINIONS OF COUNSEL.

19               SO ONLY TO THE EXTENT THAT THAT HAPPENS WOULD THOSE

20  BECOME RELEVANT AND TO THE EXTENT THAT RIM CHOOSES TO WAIVE

21  PRIVILEGE WOULD IT NEED TO PRODUCE THEM.  SO AGAIN THIS IS IN

22  RIM'S VIEW A PREMATURE REQUEST.

23               THE COURT:  SO YOU ARE SAYING THAT YOU ARE NOT

24  ASSERTING ADVICE OF COUNSEL AS A DEFENSE IN THIS CASE.

25               MR. PANKRATZ:  YOUR HONOR, NOT AT THIS POINT GIVEN

1  THAT THEY HAVE NOT ASSERTED WILLFULNESS AGAINST RIM.

2          MR. CARLSON:   THE PROBLEM IS THEIR RESPONSE TO

3  NUMBER -- INTERROGATORY NUMBER 11 IS, SUBJECT TO THE FOREGOING

4  RIM WILL PRODUCE DOCUMENTS TO THE EXTENT THEY EXIST AND FROM

5  WHICH RESPONSIVE INFORMATION OF THIS INTERROGATORY MAY BE

6  DERIVED OR ASCERTAINED WITHIN A REASONABLE PERIOD OF TIME IN

7  ACCORDANCE WITH 33(D).

8          SO, IF -- IT SEEMS TO ME THAT THEY NEED TO EITHER

9  PRODUCE THE DOCUMENTS OR THEY NEED TO AMEND THIS RESPONSE.

10          THE COURT:   WELL, I MEAN, THE RESPONSE -- YOU KNOW,

11  AGAIN I NEED TO GET OUT MY ORDER ON DISCOVERY OBJECTIONS IS

12  THAT I GENERALLY SAY, YOU KNOW, I DON'T WANT AN ANSWER THAT

13  SAYS, SUBJECT TO AND WITHOUT WAIVING OBJECTIONS.   YOU EITHER

14  OBJECT OR YOU DON'T OBJECT TO EITHER PRODUCE OR YOU DON'T

15  PRODUCE.   BUT I DON'T WANT SOMETHING THAT'S UNCLEAR.

16          SO WHAT I WOULD JUST SAY IS -- I WANT TO ASK YOU,

17  MR. CARLSON.

18          MR. CARLSON:   YES.

19          THE COURT:   YOU HAVE NOT ALLEGED WILLFULNESS, CORRECT?

20          MR. CARLSON:   NOT AT THIS POINT, THAT'S CORRECT.

21          THE COURT:   SO YOU WOULD NEED TO AMEND YOUR COMPLAINT,

22  IS THAT CORRECT?

23          MR. CARLSON:   WE WOULD, YES.

24          THE COURT:   IF YOU WANTED TO ASSERT THAT.

25          MR. CARLSON:   THAT'S CORRECT.

1          THE COURT:  IF YOU DON'T ASSERT WILLFULNESS AND THEY

2    DON'T INTERJECT ADVICE OF COUNSEL AS A DEFENSE THEN THIS IS NOT

3    RELEVANT, IS THAT CORRECT?

4          MR. CARLSON:  I AGREE WITH THAT.

5          THE COURT:  WILL, LET ME PUT IT THIS WAY.  IT MAY BE

6    RELEVANT BUT IT IS PRIVILEGED.

7          MR. CARLSON:  THAT'S CORRECT.

8          THE COURT:  I MEAN, I'M SURE IT'S -- I FEEL QUITE

9    CONFIDENT IT WOULD BE RELEVANT BUT IT WOULD BE PRIVILEGED.

10          MR. CARLSON:  THAT'S CORRECT.

11          THE COURT:  SO YOU SHOULDN'T AGREE WITH ME SO READILY.

12          SO GIVEN THE FACT, AND MY ORDER WILL REFLECT THAT THE

13   CLAIM OF PRIVILEGE IS NOT DISPUTED AT THIS POINT DUE TO THE

14   FACT THAT THERE IS NO CLAIM OF WILLFULNESS AND NO DEFENSE OF

15   ADVICE OF COUNSEL.  AND, SO YOU DON'T NEED TO PRODUCE THE

16   OPINIONS OF COUNSEL AT THIS POINT.

17          MR. CARLSON:  THAT'S FAIR.  BUT WE SHOULD BE ENTITLED

18   TO A PRIVILEGE LOG.

19          THE COURT:  WELL, GENERALLY SPEAKING IF WHAT YOU'RE

20   TALKING ABOUT IS ADVICE GIVEN BY COUNT YOU DON'T NEED A

21   PRIVILEGE LOG BECAUSE IT FALLS WITHIN THAT EXCEPTION WHERE YOU

22   CAN JUST STATE A CATEGORY OF DOCUMENTS YOU ARE NOT PRODUCING.

23          AND, SO I DON'T REQUIRE A PRIVILEGE LOG BASED ON

24   ATTORNEY COMMUNICATIONS TO ITS CLIENT FOR THE PURPOSE OF

25   RENDERING LEGAL ADVICE.  THAT IS JUST A CATEGORICAL ONE BECAUSE

 1  SOMETIMES IN THOSE INSTANCES EVEN THE PRIVILEGE LOG COULD

 2  VIOLATE THE PRIVILEGE.

 3          SO I AM JUST GOING TO SUSTAIN THE CATEGORICAL CLAIM OF

 4  PRIVILEGE AS TO, YOU KNOW, OPINION LETTERS AND NOT REQUIRE A

 5  FURTHER DESCRIPTION OF THAT.

 6          MR. CARLSON:  ALL RIGHT.  AND WE HAVE TO VISIT NUMBER

 7  NINE.

 8          THE COURT:  THAT'S CORRECT, WE DO.

 9          MR. PANKRATZ:  AND, YOUR HONOR, NUMBER NINE RAISES

10  SIMILAR QUESTIONS.  AS WE HAVE MADE CLEAR TO WI-LAN OUR BEST

11  CURRENT UNDERSTANDING IS THAT RIM FIRST LEARNED OF THE PATENTS

12  IN SUIT AS OF THE DATES OF THE RESPECTIVE COMPLAINTS FILED ON

13  US.  ALL OF THE DOCUMENTS RESPONSIVE TO THIS REQUEST THAT WE

14  CURRENTLY UNDERSTAND RIM TO HAVE ARE PRIVILEGED DOCUMENTS

15  RELATING TO THIS LAWSUIT.

16          MR. CARLSON:  WELL, THEN IF THAT'S THE CASE I BELIEVE

17  IT WOULD BE APPROPRIATE FOR THEM TO AMEND THIS RESPONSE TO SAY

18  THAT, WE LEARNED OF IT ON THE DATE OF THE FILING OF THE

19  SUITS -- OR THE DATE OF THE SERVICE OF THE SUMMONS AND

20  COMPLAINT, WHICHEVER IT WAS.

21          MR. PANKRATZ:  YEAH.  AND THAT IS IN OUR DISCOVERY

22  RESPONSES YOU ACTUALLY ASKED A REQUEST FOR WHEN WE LEARNED OF

23  IT, AND THAT IS WHAT WE SAID.  TO THE BEST OF OUR BELIEF WE

24  LEARNED OF THESE UPON SERVICE.

25          THE COURT:  OKAY.  LET ME -- I MEAN, THIS IS -- LET ME

1 JUST READ THE -- LET ME READ THE INTERROGATORY AND RESPONSE

2 AGAIN.

3 　　　　　MR. CARLSON:  IT IS ON PAGE 2O.

4 　　　　　THE COURT:  RIGHT.  I'M LOOKING AT IT.

5 　　　　　I AM VERY BAD AT MULTITASKING.  SO IT'S HARD FOR ME TO

6 LISTEN TO WHAT YOU'RE SAYING AND PROCESS IT AND READ AND

7 PROCESS IT AT THE SAME TIME.  YOU KNOW, MY GRANDSON COULD

8 PROBABLY DO THAT BUT NOT ME, OR AT LEAST HE COULD BE PLAYING A

9 VIDEO GAME WHILE READING THIS AND CLAIMED THAT HE UNDERSTOOD

10 IT.

11 　　　　　OKAY.  I THINK THAT -- I AM GOING TO REQUIRE AN

12 AMENDED RESPONSE TO NUMBER NINE BECAUSE IT HAS TOO MANY

13 QUALIFICATIONS WITH IT.  AND I DON'T -- I DON'T WANT -- I DON'T

14 WANT GENERAL OBJECTIONS INCORPORATED BECAUSE I DON'T KNOW WHICH

15 OF THE GENERAL OBJECTIONS APPLY, OR DON'T APPLY, OR WHAT YOU'RE

16 CONTENTIONS ARE OR ARE NOT.

17 　　　　　SO, I DON'T WANT -- IF THERE IS AN OBJECTION THAT

18 APPLIES YOU CAN APPLY.  IF WHAT YOU'RE SAYING IS THAT YOU FIRST

19 LEARNED -- YOU KNOW, YOU FIRST LEARNED OF THE PATENT IN SUIT,

20 OR THE PATENTS I GUESS THERE ARE THREE OF THEM, WHEN YOU WERE

21 SERVED WITH THE LAWSUIT AND THE ONLY -- THE ONLY ACTIONS TAKEN

22 THEREAFTER ARE PROTECTED BY THE, YOU KNOW, ATTORNEY/CLIENT

23 PRIVILEGE OR WORK PRODUCT THEN YOU CAN SAY THAT.  YOU KNOW,

24 BECAUSE I DON'T -- JUST BECAUSE YOU ONLY LEARNED OF IT AFTER

25 THIS LAWSUIT DOESN'T NECESSARILY MEAN IT WOULD BE PROTECTED.

 1 | IT COULD BE.  EVERYTHING COULD BE PROTECTED.  AND, SO -- YOU

 2 | KNOW, THAT'S -- AND THAT WOULD BE FINE.  I MEAN, THAT'S -- I

 3 | THINK THAT'S AN ADEQUATE RESPONSE.

 4 |         IN TERMS OF BEING PREMATURE I AM NOT SURE THAT IT

 5 | WOULD BE -- IT WOULD BE PREMATURE ONLY BECAUSE I AM NOT

 6 | REQUIRING ANYTHING TO BE PRODUCED PRIOR TO AUGUST 9TH, AND YOU

 7 | HAVE SAID IT'S PREMATURE BECAUSE OF THE AUGUST 3RD DEADLINE.

 8 | SO I THINK THAT HAS GONE OUT THE WINDOW PRETTY MUCH.

 9 |         AND TO THE EXTENT THAT THERE IS INFORMATION THAT IS

10 | NOT PROTECTED ANY TESTING OR STUDIES THAT HAVE BEEN DONE THEN,

11 | YOU KNOW, YOU WOULD HAVE TO PRODUCE THAT.  BUT I GATHER WHAT

12 | YOU'RE SAYING IS THAT IT IS ALL BASED ON ADVICE OF COUNSEL AND

13 | THINGS THAT WERE DONE AT THE DIRECTION OF COUNSEL.

14 |         IS THAT CORRECT, MR. PANKRATZ?

15 |         MR. PANKRATZ:  YES, YOUR HONOR, THAT IS CORRECT.

16 |         THE COURT:  SO I THINK --

17 |         MR. PANKRATZ:  THAT CERTAINLY -- IF THAT CHANGES OVER

18 | TIME WE WILL PRODUCE THE RELEVANT DOCUMENTS.

19 |         THE COURT:  SO I THINK YOU NEED TO ANSWER IT IN THAT

20 | WAY, YOU KNOW, DIRECTLY AND SAY THAT -- YOU KNOW, THERE IS NO

21 | OTHER RESPONSIVE INFORMATION AND SAY THAT DIRECTLY, AS OPPOSED

22 | TO SAYING YOU WILL PRODUCE DOCUMENTS TO THE EXTENT THEY EXIST

23 | BECAUSE THAT LEAVES EVERYBODY WONDERING WHETHER THERE ARE

24 | DOCUMENTS THAT EXIST.

25 |         SO, I WILL JUST REQUIRE THAT YOU AMEND IT TO CLARIFY

1   YOUR POSITION.  AND BASED UPON THAT I GUESS I'M NOT GOING TO

2   REQUIRE -- I DON'T THINK THERE IS ANYTHING ELSE FOR ME TO

3   REQUIRE, MR. CARLSON.  DO YOU AGREE?

4          MR. CARLSON:  I AGREE.

5          THE COURT:  OKAY.  SO, IN THAT SENSE, YOU KNOW, THAT'S

6   MY RULING ON THAT.  I DON'T KNOW WHETHER YOU WANT TO

7   CHARACTERIZE IT AS DENYING THE MOTION TO COMPEL OR GRANTING IT

8   IN PART.  BUT HOWEVER IT IS YOU WANT TO CHARACTERIZE IT JUST

9   FILE AN AMENDED RESPONSE THAT DIRECTLY ADDRESSES THE CURRENT

10  SITUATION.

11          MR. CARLSON:  IF YOU NOW TURN OVER --

12          MR. PANKRATZ:  THANK YOU, YOUR HONOR.  WE WILL DO SO.

13          THE COURT:  OKAY.

14          MR. PANKRATZ:  TEN DAYS IS THAT ACCEPTABLE?

15          THE COURT:  AUGUST 9TH.  I AM REQUIRING EVERYTHING --

16  I FIND THAT UNLESS THERE IS SOME REASON IT'S EASIER FOR

17  EVERYBODY IF I GIVE ONE DATE FOR EVERYTHING TO BE DONE.  THAT

18  WAY WE CAN -- YOU KNOW, YOU CAN DO IT BEFORE THEN BUT THAT WAY

19  THERE IS ONE TRIGGERING DATE.  AND IF THERE ARE ISSUES OR

20  PROBLEMS THEN YOU CAN BRING ALL OF THOSE FOLLOW-UP ISSUES OR

21  PROBLEMS TO ME AT THE SAME TIME, NOT THAT I'M EXPECTING ANY.

22          MR. CARLSON:  IF WE TURN TO THE NEXT PAGE, NUMBER 21

23  OF THE INTERROGATORY ANSWERS.

24          THE COURT:  OKAY.  IT IS NOT MY NEXT PAGE BUT --

25          MR. CARLSON:  OKAY.  WE THEN MOVE TO INTERROGATORY

```
 1  NUMBER 11.

 2          THE COURT:  OKAY.

 3          MR. CARLSON:  I NEED TO FIRST READ INTERROGATORY

 4  NUMBER 11 TO YOU TO EXPLAIN THE SITUATION.

 5          NUMBER 11 STATES, IF YOU CONTEND THAT THE RIM PRODUCTS

 6  DO NOT DIRECTLY OR INDIRECTLY INFRINGE THE PATENTS IN SUIT

 7  STATE A BASIS FOR THAT CONTENTION, AND IT GOES ON.

 8          SO, THE RESPONSE TO THIS WAS THAT -- WELL, YOU CAN SEE

 9  THE RESPONSE IS ON PAGE 21 AND 22.  BUT BASICALLY WHEN YOU GO

10  OVER TO PAGE 22 THE RESPONSE IS, WE DO NOT INFRINGE.  AND IT'S

11  AT THE TOP OF PAGE 22.

12          THE COURT:  AH-HUH.  OKAY.

13          MR. CARLSON:  IT'S NOT VERY HELPFUL TO SAY THE LEAST.

14          AND, SO --

15          THE COURT:  DIDN'T JUDGE SEITZ'S ORDER, THOUGH,

16  CONTEMPLATE --

17          MR. CARLSON:  YES.  IT DOES.

18          THE COURT:  OKAY.

19          MR. CARLSON:  SO WE ARE REQUIRED AND HAVE SUBMITTED

20  OUR CONTENTIONS, AND WE SUBMITTED THEM ON JULY 3RD, OUR

21  CONTENTIONS OF INFRINGEMENT.

22          THE COURT:  RIGHT.

23          MR. CARLSON:  AND, SO THE DEFENSE IS TAKING THE

24  POSITION THAT THEY DON'T NEED TO GIVE US ANY GREATER DETAIL

25  BECAUSE THE SCHEDULING ORDER CONTROLS WHEN THEY HAVE TO PROVIDE
```

1  THEIR CONTENTIONS OF NON-INFRINGEMENT.

2        AND, SO WE HAVE SAID TO THEM, WELL, WHERE IN THE

3  SCHEDULING ORDER DOES IT HAVE A DATE FOR YOU TO PROVIDE YOUR

4  CONTENTIONS OF NON-INFRINGEMENT?  AND WE GET NOTHING

5  SUBSTANTIVE IN RESPONSE.

6        AND, SO WE ARE SITTING HERE WITH A SITUATION WHERE ON

7  JULY 3RD AND WE PROVIDE OUR CONTENTIONS OF INFRINGEMENT, WE'VE

8  GOT THESE INTERROGATORIES OUTSTANDING WHERE THEY HAVE NOT GIVEN

9  US THEIR CONTENTIONS OF NON-INFRINGEMENT, AND AS WE READ THE

10 SCHEDULING ORDER THERE IS NOTHING IN THERE THAT TELLS WHEN THEY

11 NEED TO PROVIDE CONTENTIONS OF NON-INFRINGEMENT.

12        SO, THEREFORE, WE GO BACK TO -- THE SITUATION IS

13 GOVERNED BY THESE INTERROGATORIES, AND THERE -- YOU KNOW, WE

14 WOULD LIKE AN ORDER REQUIRING THEM TO AMEND THESE RESPONSES.

15        THE COURT:  OKAY.  YOU KNOW, IT SEEMED TO ME -- AND I

16 LOOKED AT THIS SCHEDULING ORDER WHICH THEN REFERS TO THE

17 EASTERN DISTRICT OF TEXAS PATENT RULES.

18        MR. CARLSON:  YES.

19        THE COURT:  AND IT SEEMS TO ME THAT IT WOULD BE

20 LOGICAL THAT THE AUGUST 3RD DEADLINE FOR INVALIDITY CONTENTIONS

21 WOULD GOVERN, ALTHOUGH I CAN -- YOU KNOW, THAT -- ALTHOUGH IT

22 DOESN'T EXPRESSLY GOVERNOR BECAUSE WHEN I LOOKED AT THE EASTERN

23 DISTRICT OF TEXAS PATENT RULES THAT YOU ALL ATTACHED TO YOUR

24 JOINT SCHEDULING REPORT IT REFERRED ONLY REALLY TO PRIOR ART.

25 IT DIDN'T ADDRESS THE ISSUE IN THIS INTERROGATORY.

1   BUT LET ME -- IT DOESN'T --

2   MR. PANKRATZ:  YOUR HONOR, MAY I ADDRESS?

3   THE COURT:  YES.  I WAS GOING TO SAY, MR. PANKRATZ,

4   WHY DON'T YOU HELP ME OUT HERE.

5   WHEN IS IT THAT YOU THINK YOU SHOULD RESPOND TO THIS?

6   BECAUSE OBVIOUSLY THEY ARE ENTITLED TO LEARN, YOU KNOW, WHY YOU

7   CONTEND THAT THE PRODUCTS DON'T DIRECTLY OR INDIRECTLY

8   INFRINGE.

9   AND, IN FACT, I THINK THAT JUDGE SEITZ IN THE

10  SCHEDULING CONFERENCE WITH YOU, AND I ACTUALLY HIGHLIGHTED THIS

11  IN MY COPY OF THE TRANSCRIPT, SHE SAID AT PAGE 27, THE

12  PLAINTIFFS HAVE NOT ASKED FOR IT BUT ORDERLY MY PUSH BACK TO

13  YOU ALL IS WHAT FACTS DO YOU HAVE TO SUPPORT EACH ONE OF YOUR

14  AFFIRMATIVE DEFENSES?  WE NEED TO ARE ARTICULATE THOSE SOONER

15  RATHER THAN LATER BECAUSE THAT HELPS FORM THE SCOPE OF

16  DISCOVERY.  AND THEN SHE SAYS, I WORK VERY CLOSELY WITH MY

17  MAGISTRATE JUDGE.

18  MR. CARLSON:  I HIGHLIGHTED THAT EXACTLY.  THAT'S

19  EXACTLY HIGHLIGHTED ON MY THING.

20  THE COURT:  BUT IT WASN'T HIGHLIGHTED IN ANYTHING YOU

21  GAVE TO ME.

22  MR. CARLSON:  YES, IT WAS.

23  THE COURT:  OH, IT WAS?  WELL, I DIDN'T LOOK AT WHAT

24  YOU GAVE TO ME --

25  MR. CARLSON:  TODAY.

 1          THE COURT:  -- TWO SECONDS BEFORE I TOOK THE BENCH

 2   BECAUSE IT WASN'T --

 3          SO LET ME ASK YOU, MR. PANKRATZ, WHEN IS IT THAT YOU

 4   THINK YOU SHOULD GIVE THIS TO THEM?

 5          MR. PANKRATZ:  YOUR HONOR, I WOULD PROPOSE THAT WE

 6   PROVIDE THOSE ANSWERS -- LET ME PREFACE THIS FIRST BY SAYING

 7   THAT OUR RESPONSES HERE WERE PROVIDED BEFORE THE PLAINTIFF HAD

 8   EVEN SERVED ITS INFRINGEMENT CONTENTIONS IN THIS CASE.  SO AT

 9   THE POINT WHEN WE RESPONDED HERE WE WERE RESPONDING TO

10   BASICALLY THEM (UNINTELLIGIBLE) AND SAYING, YOU INFRINGED

11   EVERYTHING.

12          WE LOOKED AT THESE PATENTS (UNINTELLIGIBLE) VALID AND

13   WE PLAN TO SERVE INVALIDITY CONTENTIONS TO THE COURT AS

14   SCHEDULED ON AUGUST 3RD SETTING OUT IN DETAIL FOR EACH AND

15   EVERY REFERENCE EXACTLY WHY WE BELIEVE THESE CLAIMS ARE ALL

16   INVALID.  SO THAT'S THE FIRST PART.

17          THE SECOND PART IS WITH RESPECT TO INFRINGEMENT.  YES,

18   WE HAVE IDENTIFIED ELEMENTS AT THIS POINT THAT WE DON'T THINK

19   WE NEED.  WE HAVEN'T DONE EVERY BIT OF ANALYSIS.  AND, IN FACT,

20   THERE IS A DATE ON THE SCHEDULE WHEN ALL OF THAT IS DUE, AND

21   THAT IS EXPERT REPORTS WHICH ARE DUE JUNE 14TH, 2013 IS THE

22   OPENING EXPERT REPORTS, THAT'S WHEN THEY WILL HAVE THEIR

23   BURDEN.  THEN JULY 12TH IS -- OF THE 2013 IS THE REBUTTAL

24   EXPERT REPORTS WHICH IS WHERE WE WILL HAVE TO SET OUT IN GREAT

25   DETAIL EXACTLY ALL OF THE REASONS THAT OUR EXPERT BELIEVES THAT

1 | OUR PRODUCTS DON'T INFRINGE.

2 | SO THERE IS A TIME AND A SCHEDULE WHEN THIS WILL BE
3 | FULLY FLESHED OUT.  AT THIS POINT, YOUR HONOR, WE HAVE OFFERED
4 | TO SUPPLEMENT AFTER THEY PROVIDE INFRINGEMENT CONTENTIONS FOR
5 | THE PRODUCTS AND WE ASKED THEM TO PROVIDE -- OFFER A DATE AND
6 | WE HEARD NOTHING BACK.  ALL WE HEARD WAS, WE'RE GOING TO THE
7 | COURTS, AND NOW WE KNOW THAT THIS IS SOMETHING THAT THEY WANTED
8 | TO TALK ABOUT.

9 | AGAIN, WE WERE -- WE MADE AN OFFER TO SUPPLEMENT AFTER
10 | THEY PROVIDED THEIR INFRINGEMENTS CONTENTIONS AND WE HEARD
11 | NOTHING BACK FROM THEM ON THAT.

12 | YOUR HONOR, I WOULD LIKE TO SAY AGAIN THEIR
13 | INFRINGEMENT CONTENTIONS ARE DEFICIENT UNDER THE RULES IN THIS
14 | CASE.  THEY REQUIRE FOR EACH ACCUSED PRODUCT A CLAIM CHART
15 | TELLING US WHY THEY THINK THAT IT INFRINGES.  AND, YOUR HONOR,
16 | THEY HAVE NOT DONE THAT.  THEY HAVE ONLY ACCUSED BASICALLY ONE
17 | PRODUCT, AND THE PRECEDENT WITH RESPECT TO THESE RULINGS THAT
18 | IS INSUFFICIENT.

19 | THAT SAID, YOUR HONOR, WE THINK THAT THE
20 | (UNINTELLIGIBLE) SHOULD BE FOR US TO RESPOND THAT THIS
21 | INTERROGATORY WERE SERVED ON THE DAY THAT THEY PROVIDED US WITH
22 | THE CLAIM CHARTS, THE INFRINGEMENT CONTENTIONS THAT ARE
23 | REQUIRED UNDER THE COURT'S RULES.

24 | THE COURT:  WHICH THEY HAVE PROVIDED NOW, RIGHT?
25 | MR. CARLSON:  YES.  I --

 1          MR. PANKRATZ:  WHICH THEY HAVE -- AT LEAST FOR ONE

 2   PRODUCT, YES.

 3          THE COURT:  OKAY.  SO WHAT YOU NEED TO -- WHAT YOU

 4   NEED TO DO IS, YOU NEED -- YOU SAID YOU WERE GOING TO RESPOND

 5   TO THAT BY AUGUST 3RD?

 6          MR. PANKRATZ:  WELL, YOUR HONOR, AUGUST 3RD IS THE

 7   DATE THAT OUR INVALIDITY CONTENTIONS ARE DUE.

 8          THE COURT:  RIGHT.

 9          MR. PANKRATZ:  A LITTLE BIT OF IT.

10          THE COURT:  WHEN DO YOU WANT TO RESPOND TO THIS?

11          OBVIOUSLY I'M NOT GOING TO REQUIRE YOU TO PROVIDE YOUR

12   EXPERT WITNESS ANALYSIS IN ADVANCE OF THE TIME WHEN YOU ARE

13   REQUIRED TO PROVIDE YOUR EXPERT WITNESS ANALYSIS.  BUT ARE YOU

14   INTENDING TO RESPOND TO THIS BY AUGUST 3RD THEIR -- YOU KNOW,

15   THE BASIS FOR YOUR CONTENTION THAT RIM PRODUCTS DON'T DIRECTLY

16   OR INDIRECTLY INFRINGE?

17          MR. PANKRATZ:  YOUR HONOR, AGAIN WE WOULD PROPOSE THAT

18   THE DATE TRIGGER OFF THE DATE THAT THEY PROVIDED US WITH A

19   CLAIM CHART FOR THE PRODUCT.  FOR EACH PRODUCT THAT THEY

20   PROVIDE A CLAIM CHART FOR OUR DISCOVERY OBLIGATIONS TRIGGER OFF

21   OF THAT, AND THAT WE HAVE -- AS IF THEY SERVED THE

22   INTERROGATORY THAT DAY THE TRADITIONAL PERIOD TO RESPOND TO

23   THAT REQUEST.

24          THE COURT:  OKAY.  AND, SO IF THEY SUBMITTED THEIR

25   CONTENTIONS REGARDING INFRINGEMENT ON JULY 3RD FOR THE PRODUCT

 1  THEY IDENTIFIED --

 2          MR. CARLSON:  I MISSPOKE.  IT WAS JULY 13.  I

 3  APOLOGIZE.

 4          THE COURT:  YEAH.  I WAS WONDERING WHY -- I NOTICED

 5  THAT THAT WAS 10 DAYS BEFORE, BUT I THOUGHT MAYBE YOU WERE JUST

 6  EARLIER.

 7          MR. CARLSON:  NO.  I MISSPOKE.

 8          THE COURT:  OKAY.

 9          MR. CARLSON:  IT IS JULY 13TH.

10          THE COURT:  OKAY.  JULY 13TH.

11          THEN WHAT I WOULD SAY IS BASED ON THE FACT THAT I

12  BELIEVE THAT JUDGE SEITZ HAS NOT GIVEN YOU 30 DAYS TO RESPOND

13  IN TERMS OF THE INVALIDITY.  BUT SINCE I'M USING AUGUST 9TH AS

14  MY DEADLINE FOR -- YOU KNOW, FOR PRODUCING EVERYTHING I WOULD

15  JUST SAY THAT FOR EACH PRODUCT THAT THEY IDENTIFY AND PROVIDE A

16  CLAIM CHART, AND HAVE PROVIDED IT, AND THEY SUBMITTED ONE ON

17  JULY 13TH -- IT MAY BE THAT THEY ARE SATISFIED THAT'S ONE, AND

18  WHEN YOU RESPOND TO THAT ONE IT WOULD -- THE SAME WOULD APPLY

19  TO EVERY OTHER PRODUCT BECAUSE IT IS BASICALLY THE SAME PATENT

20  THAT'S BEING USED.  AND, SO THEIR CONTENTIONS ON THE PATENT

21  WOULD BE THE SAME FOR EACH PRODUCT AND PROBABLY YOUR CLAIMS OF

22  INVALIDITY WOULD BE THE SAME.

23          SO IT WOULD SEEM TO SEEM TO ME THAT WHAT I WILL DO IS,

24  I'M JUST GOING TO SAY, BY AUGUST 9TH, YOU KNOW, SUPPLEMENT THE

25  ANSWER TO THIS INTERROGATORY.  AND YOU CAN -- YOU CAN DO SO TO

 1 | THE EXTENT THAT YOU SERVE INVALIDITY CONTENTIONS ON AUGUST 3RD

 2 | AND YOU CAN INCORPORATE BY REFERENCE THOSE INVALIDITY

 3 | CONTENTIONS WHICH I THINK ARE MORE LIMITED THAN THIS BECAUSE I

 4 | THINK THAT THIS -- THIS MAY GO BEYOND PRIOR ART AS A CLAIM OF

 5 | INVALIDITY.

 6 | I HAVE NOT --

 7 | MR. PANKRATZ:  IT DOES, YOUR HONOR.

 8 | THE COURT:  I WAS GOING TO SAY.

 9 | SO, I WOULD JUST SAY BY AUGUST THE 9TH YOU CAN

10 | SUPPLEMENT THE ANSWER TO THIS INTERROGATORY BASED ON THE FACT

11 | THAT YOU GOT YOUR CONTENTIONS OF INFRINGEMENT ON JULY 13TH.

12 | IF THERE IS SOME REASON WHY YOU NEED TAKE A FEW EXTRA

13 | DAYS YOU CAN TALK TO OPPOSING COUNSEL AND SEE IF IT IS

14 | AGREEABLE.  I'M SURE -- I FEEL QUITE CERTAIN HE WILL BE

15 | REASONABLE, SINCE I'M BASICALLY SAYING THAT MY PRACTICE

16 | GENERALLY IS IF YOU SET SOMETHING DOWN LIKE FOR AN EXTENSION OR

17 | SOMETHING THAT I STAY PRODUCTION UNTIL I GET TO IT SO IT

18 | RESOLVES ISSUES SOMETIMES THAT WAY.

19 | SO I WILL GIVE YOU UNTIL AUGUST 9TH.  DOES THAT MAKE

20 | SENSE TO YOU, MR. PANKRATZ?

21 | MR. PANKRATZ:  YES, IT DOES, YOUR HONOR.  THANK YOU.

22 | THE COURT:  OKAY.  AND, MR. CARLSON?

23 | MR. CARLSON:  THAT IS FINE.

24 | MR. PANKRATZ:  THIS IS WHAT WE WERE TRYING TO WORK OUT

25 | WITH THE OTHER SIDE.

1           THE COURT:  AND IT IS WHAT THE OTHER SIDE WAS TRYING

2    TO WORK OUT WITH YOU TOO.  SO WE NOW HAVE A HAPPY MEDIUM.

3           MR. PANKRATZ:  YES.  THANK YOU.

4           THE COURT:  SO --

5           MR. CARLSON:  THE LAST CATEGORIES ARE INTERROGATORIES

6    14 AND 15.  THEY ARE FOUND ON PAGES 23 AND 24.

7           THE COURT:  OKAY.

8           MR. CARLSON:  THESE GO DIRECTLY TO THE QUOTE THAT YOU

9    QUOTED EARLIER FROM JUDGE SEITZ ABOUT DEFENSES AND HER COMMENT

10   ABOUT PUSH BACK.  IF ALL YOU, YOU KNOW, IF ALL YOU DO IS SAY TO

11   DEFENSE AND YOU DON'T PROVIDE ANY DETAIL, YOU KNOW, THE COURT

12   IS GOING TO PUSH BACK ON THAT.

13          SO INTERROGATORY NUMBER 14 WAS REQUESTING DETAIL

14   REGARDING THE THIRD DEFENSE WHICH IS LACHES, WAIVER, ESTOPPEL.

15   AND NUMBER 15 WAS REQUESTING DETAIL ON THE TENTH DEFENSE, WHICH

16   IS THE DOCTRINE OF LICENSE, EXHAUSTION, AND IMPLIED LICENSE.

17          BASICALLY THE RESPONSE THAT -- THE ANSWER THAT WAS

18   GIVEN IN EACH INSTANCE WAS TO BASICALLY RECITE THE ELEMENTS OF

19   THE DEFENSE RATHER THAN GIVING ANY DETAILS OR FACTS SUPPORTING

20   THOSE ELEMENTS.

21          SO IT IS OUR REQUEST THAT THE DEFENDANTS BE ORDERED TO

22   SUPPLEMENT NUMBERS 14 AND 15 TO PROVIDE THE FACTS THAT SUPPORT

23   THE DEFENSES THAT THEY HAVE ASSERTED.

24          THE COURT:  OKAY.  AND I WILL JUST SAY THAT IN

25   GENERAL, YOU KNOW, DISCOVERY IS CLEARLY ONGOING AND, YOU KNOW,

 1 THESE ARE THE CLAIMS THAT THINGS THAT MAY BE SUPPLEMENTED --
 2 THAT MAY BE SUPPLEMENTED LATER ON, YOU KNOW, AS LONG AS IT'S, I
 3 THINK THE WORD IS SEASONABLY SUPPLEMENT THE RESPONSES.

 4         BUT IT DOES SEEM THAT THE RESPONSES ARE JUST TOO
 5 GENERAL AND -- OR JUST TOO GENERAL IN TERMS AND THEY DON'T GIVE
 6 ANY SPECIFIC FACTS.

 7         NOW, I DON'T THINK IN TERMS OF MARSHALING YOUR
 8 EVIDENCE I CERTAINLY WOULD NOT REQUIRE YOU TO DETAIL SOUP TO
 9 NUTS EVERY STATEMENT BY EVERY WITNESS AND THE IDENTITY OF
10 WITNESSES WHO WOULD SUPPORT EACH FACT.  BUT I THINK THAT YOU DO
11 NEED TO GIVE -- YOU DO NEED TO GIVE MORE SPECIFIC FACTS SO THAT
12 THEY CAN EXPLORE THOSE FACTS WHEN THEY ARE EXAMINING WITNESSES
13 IN DEPOSITIONS.  I DO THINK THIS IS A BIT OVERBROAD.

14         I DON'T THINK YOU HAVE TO PERFORM YOUR ENTIRE ANALYSIS
15 AND MARSHAL ALL OF YOUR EVIDENCE, BUT I DO THINK YOU DO NEED TO
16 PROVIDE MORE SPECIFIC FACTS THAN WHAT YOU HAVE.

17         SO, MR. PANKRATZ, AND THEN IF THEY THINK THEY ARE NOT
18 SUFFICIENTLY DETAILED THEY CAN COME BACK.  BUT I DO THINK THAT
19 YOU NEED TO PROVIDE SOME ADDITIONAL SPECIFIC FACTS, YOU KNOW,
20 WITH RESPECT TO THE ELEMENTS OF THE LEGAL THEORY.  BUT I THINK
21 THE LEGAL THEORY IS LACHES, WAIVER, ESTOPPEL, AND/OR
22 ACQUIESCENCE.  I MEAN, I THINK THAT IS THE LEGAL THEORY.  I'M
23 NOT SURE WHAT IT IS THAT THEY WANT YOU TO STATE MORE THAN THAT.
24         MR. CARLSON:  WELL, BY WAY OF EXAMPLE --
25         MR. PANKRATZ:  YOUR HONOR, IF I COULD ADDRESS --

1        THE COURT:  YES.

2        MR. PANKRATZ:  -- BOTH OF THESE.  I THINK WE HAVE

3    GIVEN THEM THE FACTS THAT ARE SUFFICIENT AT THIS POINT WITH

4    RESPECT TO LACHES IN PARTICULAR AND THE OTHER THEORIES

5    ENCOMPASSED IN THIS INTERROGATORY NUMBER 14.

6        MOST OF THE FACTS FOR WHY IT IS THEY DELAYED, BECAUSE

7    THEY DID DELAY, WE JUST DON'T KNOW WHY.  THOSE FACTS ARE

8    (UNINTELLIGIBLE) THAT WE INTENT TO INVESTIGATE THIS THROUGH

9    DISCOVERY, AND WHEN THEY HAVE THEM WE WILL SUPPLEMENT AS YOU

10   SUGGEST.

11       SIMILARLY WITH RESPECT TO INTERROGATORY NUMBER 15,

12   WHICH TALKS ABOUT WHETHER -- WHICH TALKS ABOUT (UNINTELLIGIBLE)

13   EXHAUSTION ISSUES, WE HAVE SPECIFICALLY IDENTIFIED AN EXISTING

14   AGREEMENT OR LICENSE BETWEEN WI-LAN AND TEXAS INSTRUMENTS.  SO

15   THAT'S WHERE WE ARE GOING.  WE HAVE GIVEN THEM THE EXACT

16   DIRECTION OF WHERE WE ARE GOING.

17       THE REST OF THE FACTS ON THESE ARE REALLY WITHIN

18   WI-LAN'S CONTROL AND WE HAVE YET TO GET DISCOVERY ON THEM.  WE

19   WILL, AS YOU SUGGESTED, YOUR HONOR, SEASONALLY SUPPLEMENT THEM

20   WHEN WE HAVE THOSE FACTS AT HAND.

21       THE COURT:  OKAY.  MR. CARLSON, WHAT ARE YOU SEEKING

22   MORE SPECIFICALLY AT THIS POINT?

23       MR. CARLSON:  WELL, THESE ARE AFFIRMATIVE DEFENSES,

24   AND IN THESE TYPES OF DEFENSES THE -- I'M GOING TO USE THE WORD

25   PREJUDICE.  IT'S NOT REALLY THE RIGHT WORD TO USE, BUT I'M SORT

1  OF -- IT CONVEYS THE ESSENCE OF WHAT I WANT TO GET ACROSS.  AND

2  THAT IS THAT THE DEFENDANT HAS TO SHOW THAT THEY HAVE SOMEHOW

3  BEEN PREJUDICED, OR THAT THEY TOOK ACTION OR DIDN'T TAKE

4  ACTION, OR THAT THEY COULD HAVE TAKEN ACTION THAT WAS

5  REASONABLY AVAILABLE TO THEM IF THEY HAD KNOWN BUT THEY DIDN'T

6  TAKE THAT BECAUSE THEY DIDN'T KNOW.

7  SO, WE NEED TO KNOW WHAT IT IS THAT THESE FOLKS COULD

8  HAVE DONE OR -- YOU KNOW, THAT WAS REASONABLY AVAILABLE TO THEM

9  IF THEY HAD KNOWN, HOW THEY HAVE BEEN PREJUDICED BY THESE --

10  YOU KNOW, THIS DELAY.  AND, SO IT'S SORT OF -- IT'S NOT REALLY

11  FACTS THAT ARE OUR POSSESSION, IT'S THE FACTS THAT ARE IN RIM'S

12  POSSESSION THAT WE ARE SEEKING INFORMATION ABOUT.

13  THE COURT:  OKAY.  MR. PANKRATZ?

14  MR. PANKRATZ:  YOUR HONOR, I GET THE SENSE WHAT HE'S

15  ASKING FOR TO DO HERE IS WHAT YOU SAID WAS NOT NECESSARY AT

16  THIS STAGE -- IN THE INITIAL STAGE, WHICH IS MARSHAL ALL OF THE

17  REASONS, ALL OF THE THINGS THAT WE COULD HAVE DONE.  WE HAVE

18  IDENTIFIED FOR THEM THE THINGS THAT -- THE REASONS WHY WE ARE

19  PREJUDICED, AND THEY ARE WELCOME TO EXPLORE THOSE THROUGH

20  DISCOVERY JUST AS WE WILL BE FLESHING THOSE OUT OURSELVES WITH

21  (UNINTELLIGIBLE).

22  THE CRUX OF LACHES HERE IS WE NEED TO UNDERSTAND WHY

23  IT WAS THEY CHOSE TO DELAY BRINGING THIS SUIT.  WE JUST DON'T

24  KNOW THAT AT THIS POINT BECAUSE --

25  THE COURT:  WELL, WHAT IS YOUR -- WHAT THEY ARE SAYING

1   IS THEY WANT TO KNOW HOW YOU HAVE BEEN PREJUDICED.

2           NOW, YOU SAY LOSS OF RECORDS, ACCESSIBILITY OF

3   WITNESS, AND/OR RELIANCE ON MEMORIES OF LONG PAST EVENTS, I

4   SUPPOSE.

5           YOU SAY THAT YOU ARE PREJUDICED ECONOMICALLY TO THE

6   EXTENT THERE IS ANY LOSS OF MONITORY INVESTMENTS OR DAMAGE THAT

7   WOULD HAVE BEEN PREVENTED.  I'M NOT SURE EXACTLY WHAT YOU MEAN.

8           MR. PANKRATZ:  WELL, YOUR HONOR, IF WE WERE AWARE TWO

9   YEARS AGO WE (UNINTELLIGIBLE) ACQUIRED THE PATENT THAT THEY

10  SUED ON THAT THEY WERE GOING TO SUE US WE COULD HAVE

11  POTENTIALLY TAKEN STEPS TO AVOID THE TWO YEARS OF DAMAGES THAT

12  HAVE SUBSEQUENTLY ACCRUED.

13          MR. CARLSON:  AND WHAT WE ARE SAYING NOW IS WHAT STEP

14  WERE REASONABLY AVAILABLE TO THEM THAT THEY COULD HAVE TAKEN.

15  NOT JUST, YOU KNOW, STEPS THAT MIGHT HAVE BEEN AVAILABLE, NO.

16  WE NEED TO KNOW WHAT STEPS ACTUALLY WERE AVAILABLE SO THAT THEY

17  WOULD BE ABLE TO PROVE THIS AFFIRMATIVE DEFENSE.

18          I ALSO WANT TO MENTION ON NUMBER -- THE SECOND ONE

19  ABOUT LICENSE.  THEY MENTION A LICENSE IN THEIR RESPONSE.  THEY

20  MENTION A LICENSE WITH TEXAS INSTRUMENTS AND, YOU KNOW, WHAT

21  LICENSE WITH TEXAS INSTRUMENTS?

22          MR. PANKRATZ:  YOU GUYS ADMITTED IN OPEN COURT THAT

23  THERE IS AN AGREEMENT WITH TEXAS INSTRUMENTS.  SO THAT'S WHAT

24  WE ARE REFERRING TO.  YOU HAVE A SETTLEMENT AND YOU DISMISSED

25  THE CASE THAT'S IN PUBLIC RECORDS.  THAT'S WHAT WE ARE

1 REFERRING TO. TO THE EXTENT THERE ARE OTHER AGREEMENTS

2 (UNINTELLIGIBLE) DISCOVER THOSE DURING THE PROCESS HERE WE WILL

3 SUPPLEMENT.

4 MR. CARLSON: WELL, WE'VE ALREADY ADDRESSED THIS IN

5 OPEN COURT. BUT IF THERE IS -- IF THERE IS SOMETHING ELSE WE

6 NEED TO KNOW WHAT ELSE IT IS THAT THEY ARE RELYING ON.

7 THE COURT: WELL, THEY HAVEN'T -- WHAT I WOULD SAY,

8 THE ONLY THING THAT YOU ARE IDENTIFYING NOW IS THIS AGREEMENT

9 WITH TEXAS INSTRUMENTS, IS THAT CORRECT? THAT'S THE WAY I READ

10 THE ANSWER TO NUMBER 15. IS THAT CORRECT, MR. PANKRATZ?

11 MR. PANKRATZ: YES, YOUR HONOR. AND THAT WAS THE WAY

12 IT WAS INTENDED TO BE READ.

13 THE COURT: OKAY. SO THAT'S THE ONLY THING THEY ARE

14 AGREEING. SO IT IS LIMITED AT THAT POINT TO THAT LICENSE, AND

15 THAT'S WHAT THEY HAVE RESPONDED. THAT SHOULD CLARIFY THEIR

16 REQUEST -- THEIR RESPONSE THAT THAT IS THE LICENSE THEY ARE

17 RELYING ON.

18 MR. CARLSON: IT'S ACTUALLY AN AGREEMENT.

19 THE COURT: WELL, IT'S AN AGREEMENT, RIGHT.

20 MR. CARLSON: YES. WE JUST NEED TO MAKE SURE THAT'S

21 IT AND -- AND THERE IS NOTHING ELSE. THAT'S ALL.

22 THE COURT: AND THEY WILL SUPPLEMENT IF THEY LEARN OF

23 SOME OTHER LICENSE THAT APPLIES.

24 MR. CARLSON: OKAY.

25 THE COURT: AND I KNOW THAT -- AND THIS HAS NOTHING TO

 1 DO WITH, I ASSUME, THE ISSUE OF THE GOVERNMENT CONTRACT,

 2 CORRECT?  WHICH WAS A DIFFERENT ISSUE.  LIKE IT WAS -- I JUST

 3 WANTED TO MAKE SURE THAT THAT WAS A DIFFERENT ISSUE.

 4        IS THAT CORRECT, MR. PANKRATZ?  YOU ARE STILL RELYING

 5 ON THE FACT THAT THE GOVERNMENT -- THAT THESE WERE PRODUCED

 6 PURSUANT TO A GOVERNMENT CONTRACTOR THAT -- IS THAT -- I MEAN,

 7 MAYBE I'M CONFUSING THE ISSUES.

 8        MR. PANKRATZ:  THIS INTERROGATORY 15, YOUR HONOR, WE

 9 DO NOT BELIEVE THAT THAT IMPLICATES THE GOVERNMENT EXCLUSION --

10        THE COURT:  OKAY.

11        MR. PANKRATZ:  -- UNDER AUTHORIZATION AND CONSENT.  WE

12 BELIEVE THAT INTERROGATORY NUMBER 15 IS (UNINTELLIGIBLE) AS

13 YOUR HONOR RECOGNIZED SOLELY ON THIS ISSUE OF THE AGREEMENT OR

14 LICENSE, WHATEVER THEY WANT TO CALL IT, THAT THEY HAVE WITH

15 TEXAS INSTRUMENTS.

16        THE COURT:  OKAY.  THE ONLY THING THAT I AM GOING TO

17 DO IS WITH RESPECT TO INTERROGATORY NUMBER 14, I AM JUST GOING

18 TO REQUIRE -- I THINK YOU HAVE PROVIDED KIND OF THE DETAILS --

19 SOME OF THE DETAILS OF WHY YOU BELIEVE LACHES BARS THIS.

20        BUT I'M GOING TO REQUIRE A SUPPLEMENT, BUT I AM NOT

21 GOING TO REQUIRE IT TO BE IN THE NEAR FUTURE BECAUSE I DON'T

22 THINK THAT THIS IS -- I DON'T THINK THAT IT IS NECESSARY AT

23 THIS POINT.  THEY KNOW THAT YOU ARE JUST CLAIMING GENERALLY

24 THAT -- YOU KNOW, IT LOOKS LIKE YOU ARE CLAIMING BASICALLY

25 GENERAL -- YOUR GENERAL PREJUDICES, THE SAME PREJUDICE THAT

1  OCCURS WHENEVER ANY LAWSUIT IS FILED AFTER THE EVENTS, WHICH IS

2  THERE IS LOSS OF RECORDS, WITNESSES DON'T REMEMBER AS WELL.

3  YOU KNOW, YOU CAN'T FIND WITNESSES.

4           AND, SO I THINK THAT YOU PROBABLY DON'T KNOW AT THIS

5  POINT WHETHER OR NOT THOSE WILL BE SUFFICIENTLY PREJUDICIAL.

6  BUT I AM GOING TO REQUIRE YOU TO USE SOME DILIGENCE AND TO

7  SUPPLEMENT IT.  BUT IT SEEMS TO ME THAT THIS IS NOT SOMETHING

8  THAT NEEDS TO BE SUPPLEMENTED, YOU KNOW, WITHIN THE NEXT 30

9  DAYS OR ANYTHING OF THAT NATURE.

10          WHEN DO YOU THINK YOU CAN PROVIDE MORE DETAILS

11 REGARDING SUPPLEMENTATION, JUST TO DO AN INITIAL

12 SUPPLEMENTATION THAT GIVES MORE FACTS, MR. PANKRATZ?

13          MR. PANKRATZ:  YOUR HONOR, AT THIS POINT I DON'T KNOW,

14 BUT CERTAINLY WE WILL (UNINTELLIGIBLE) UNCOVER THOSE FACTS.

15          THE COURT:  OKAY.  WILL, THAT'S --

16          (BOTH TALKING AT THE SAME TIME)

17          THE COURT:  WHAT I'M SUGGESTING IS THAT YOU MIGHT BE

18 REQUIRED TO UNCOVER THOSE -- TO EXERCISE A LITTLE MORE SPEED IN

19 UNCOVERING THOSE FACTS.

20          I MEAN, I DON'T SEE THIS AS ANYTHING THAT'S REALLY

21 PARTICULARLY NECESSARY IN ORDER TO FOCUS ON THE CLAIM

22 CONSTRUCTION ISSUES, FOR EXAMPLE.  THIS SEEMS TO GO WAY BEYOND

23 THAT.  SO MY THOUGHT WAS PERHAPS 90 DAYS.

24          MR. CARLSON:  YOUR HONOR, GIVE THEM 120.

25          THE COURT:  A HUNDRED AND TWENTY DAYS?  DOES THAT --

 1  DO YOU THINK YOU WILL HAVE --

 2          MR. PANKRATZ:  YES, YOUR HONOR.  THANK YOU.

 3          THE COURT:  OKAY.  SO LIKE I SAID, I DON'T THINK THIS

 4  IS ANYTHING THAT REALLY NEEDS TO BE DONE UNDER THE EXISTING

 5  TIME SCHEDULE.  I DON'T THINK IT WOULD HURT ANYTHING IN LIGHT

 6  OF THE FACT THAT YOUR EFFORTS ARE REALLY GOING TO BE DIRECTED

 7  TOWARD CLAIMS CONSTRUCTION.  SO WE ARE NOW AT -- I HAVE LOST MY

 8  DAY.

 9          MR. CARLSON:  IT WOULD BE LIKE NOVEMBER -- IT WOULD BE

10  LIKE THANKSGIVING.

11          THE COURT:  IT WOULD BE LIKE YOUR PRESENT.

12  THANKSGIVING IS --

13          MR. CARLSON:  WORKING ON THAT DAY, YOUR HONOR.

14          THE COURT:  THANKSGIVING I THINK IS THE 22ND.  SO WHAT

15  ABOUT NOVEMBER 29TH?  THAT'S A THURSDAY.  IT IS THE THURSDAY

16  AFTER THANKSGIVING.

17          SO I WOULD JUST SAY -- IS THAT A GOOD DAY FOR YOU,

18  MR. PANKRATZ?

19          MR. PANKRATZ:  I DON'T HAVE MY SCHEDULE IN FRONT OF ME

20  BUT, YOUR HONOR, WE WILL MAKE THAT WORK.

21          THE COURT:  OKAY.  SO BY NOVEMBER 29TH YOU NEED TO

22  PROVIDE A SUPPLEMENT TO INTERROGATORY NUMBER 14 WITH MORE

23  SPECIFIC FACTS TO SUPPORT THIS AFFIRMATIVE DEFENSE.

24          IS THERE ANYTHING ELSE THAT WE NEED TO DO TODAY,

25  MR. CARLSON?

 1          MR. CARLSON:  NO, YOUR HONOR.  THANK YOU.

 2          THE COURT:  IS THERE ANYTHING FROM YOUR PERSPECTIVE,

 3   MR. PANKRATZ?

 4          MR. PANKRATZ:  NO.  ALTHOUGH WE MAY BE BACK.  AS I

 5   MENTIONED WE DON'T HAVE (UNINTELLIGIBLE) AT THIS POINT SO WE

 6   MAY BE BACK SOON.

 7          THE COURT:  WELL, I GUESS THEY'RE GOING TO BE LIMITED

 8   TO WHAT THEY SPECIFY.  SO YOU SHOULD BE A HAPPY CAMPER.

 9          MR. PANKRATZ:  WELL, I'M CONFIDENT THEY WILL TELL ME

10   THEY'VE COMPLIED WITH THE RULES BY JUST PROVIDING A SINGLE

11   CLAIM CHART AND THEN SAYING THAT EVERYTHING ELSE WORKS THE SAME

12   WAY.

13          THE COURT:  OKAY.  AND, SO I GUESS YOU RATHER THEY

14   XEROX IT AND WHITE OUT THE NAME OF THE DEVICE AND PUT IT AT

15   THE -- I MEAN WHATEVER.

16          MR. CARLSON:  SEVENTY TIMES.

17          MR. PANKRATZ:  WELL, YOUR HONOR --

18          THE COURT:  AND I AGREE.

19          MR. PANKRATZ:  -- I APPRECIATE YOUR COMMENT THERE.  I

20   THINK THERE IS MORE TO IT BECAUSE WE BELIEVE THAT THEY ARE

21   ACCUSING PRODUCTS THAT FUNDAMENTALLY HAVE DIFFERENT OPERATIONS

22   WITH RESPECT TO THE RELEVANT FEATURES AND THEY SHOULDN'T BE

23   ALLOWED TO JUST (UNINTELLIGIBLE).

24          THE COURT:  AND I THINK THAT'S AN IMPORTANT

25   DISTINCTION.  I DO NOTE THAT THE PRODUCTS ARE SOMEWHAT

1 DIFFERENT.  AND, SO THEY REALLY DO NEED TO MAKE A GOOD FAITH --

2 YOU KNOW, A GOOD FAITH EFFORT TO -- YOU KNOW, TO RESOLVE THAT,

3 AND I WILL RELY ON THE TWO OF YOU TO GET TOGETHER AND RESOLVE

4 THAT.  THEY WILL BE BOUND BY WHAT THEY DO.

5        I DON'T KNOW WHAT RISKS THEY MAY WANT TO TAKE WITH

6 RESPECT TO RELYING ON ONE CLAIM CHART OR WHETHER THEY, YOU

7 KNOW, WANT TO COVER THEIR BASES.  BUT I'M HAPPY TO HEAR FROM

8 YOU, YOU KNOW.  IT IS ALWAYS A PLEASURE.

9        MR. CARLSON:  THANK YOU, YOUR HONOR.

10        THE COURT:  WHAT I WANT YOU TO DO, MR. CARLSON, IS I

11 WANT YOU TO SUBMIT A PROPOSED ORDER TO ME THAT COVERS THESE

12 ITEMS.  HOPEFULLY YOU HAVE SOMEBODY WHO HAS BEEN TAKING NOTES

13 OR NO?  OKAY.  WELL, I'LL DO A BRIEF ORDER THEN.  OH, WAIT.

14 YOUR CLIENT HAS BEEN TAKING NOTES IT LOOKS LIKE.

15        MR. CARLSON:  OKAY.  WELL, WE WILL DO SOMETHING THEN.

16        THE COURT:  TALK TO MR. PANKRATZ ABOUT IT OR I CAN DO

17 IT.  I JUST -- THE ONLY REASON THAT I SUGGEST THAT IS I'VE GOT

18 A CRIMINAL MATTER ON ALL DAY TOMORROW AND THEN I START CRIMINAL

19 DUTY.  I NEVER KNOW WHETHER I'M GOING TO BE GOING LIKE 24 HOURS

20 A DAY ON IT OR WHETHER IT'S GOING TO BE AN EASY WEEK.  YOU

21 KNOW, WE HAVE LIMITED MATTERS ON THE CALENDAR.  I DON'T HAVE

22 LIMITED MATTERS ON THE CALENDAR, I KNOW THAT BECAUSE I'VE SEEN

23 AND IT ONLY INCREASES.  SO IN ORDER TO GET IT OUT QUICKLY IT

24 WOULD BE EASIER FOR ME IF YOU WOULD DO THAT.

25        MR. CARLSON:  YES.

 1          THE COURT:  I WILL BRIEFLY REVIEW -- IF I CAN.  IF I

 2  CAN FIND MY -- IT'S GOING TO TAKE ME A MINUTE TO DECIPHER MY

 3  NOTES.

 4          BUT GET TOGETHER WITH MR. PANKRATZ.  IF YOU HAVE A

 5  DISAGREEMENT, SUBMIT ONE PROPOSED ORDER WITH THE ALTERNATIVE

 6  LANGUAGE AND THEN I WILL LOOK AT MY NOTES AND PICK IF THE TWO

 7  OF YOU CANNOT AGREE ON IT.

 8          MR. CARLSON:  OKAY.  VERY GOOD.

 9          THE COURT:  MR. PANKRATZ, ANY PROBLEM WITH THAT?

10          MR. PANKRATZ:  NO.  THAT IS FINE.  THANK YOU, YOUR

11  HONOR.

12          THE COURT:  OKAY.  FINE.

13          THANK YOU ALL VERY MUCH AND HAVE A LOVELY EVENING.

14          MR. PANKRATZ:  THANK YOU.  YOU TOO.

15                          - - -

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3                    C E R T I F I C A T E
 4
 5
 6   UNITED STATES OF AMERICA
 7   SOUTHERN DISTRICT OF FLORIDA
 8
 9
10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED
11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO
12   HEREBY CERTIFY THAT THE FOREGOING 54 PAGES CONSTITUTE A TRUE
13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN
14   THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.
15        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS
16   24TH DAY OF AUGUST 2012.
17
18                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
19                              OFFICIAL FEDERAL COURT REPORTER
                                299 EAST BROWARD BLVD., 202B
20                              FORT LAUDERDALE, FL  33301
                                TELEPHONE 954/769-5488
21
22
23
24
25
```